# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
June 2, 2011 Session Heard at Girls' State at Lipscomb University[1]

## JOHANNA L. GONSEWSKI v. CRAIG W. GONSEWSKI

**Appeal by Permission from the Court of Appeals, Middle Section**
**Circuit Court for Sumner County**
**No. 30476-C      Tom E. Gray, Chancellor, by Interchange**

---

**No. M2009-00894-SC-R11-CV - Filed September 16, 2011**

---

We granted review in this divorce case to determine whether alimony in futuro should be awarded to a spouse who has a college degree, good health, a stable work history in a relatively high paying job, and a lack of demonstrated need for such long-term alimony. The trial court divided the parties' real and personal property, declined to award spousal support of any type to either party, and denied a request made by both parties that they be awarded their attorney's fees and expenses. The Court of Appeals affirmed the trial court's division of the marital estate, but reversed the trial court's judgment regarding spousal support and ordered the husband to pay the wife alimony in futuro in the amount of $1,250 per month until her death or remarriage. The Court of Appeals also awarded the wife, in the form of alimony in solido, her attorney's fees and expenses, both at trial and on appeal. We conclude that the award of alimony in futuro and the award of attorney's fees and expenses is inappropriate in this case. Additionally, the wife has failed to demonstrate that transitional alimony is appropriate. We therefore reverse the Court of Appeals and reinstate the trial court's judgment.

**Tenn. R. App. P. 11 Appeal by Permission;**
**Judgment of the Trial Court Affirmed**

CORNELIA A. CLARK, C.J., delivered the opinion of the Court, in which JANICE M. HOLDER, GARY R. WADE, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Jeffrey L. Levy (on appeal), Derek K. Burks (at trial), Nashville, Tennessee, and William L. Moore, Jr. (on appeal), Gallatin, Tennessee, for the appellant, Craig W. Gonsewski.

---

[1] Oral argument was presented at Girls' State at Collins Alumni Auditorium at Lipscomb University in Nashville, Tennessee, as a part of the **S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents (S.C.A.L.E.S.) project.

Edward J. Gross, Nashville, Tennessee, for the appellee, Johanna L. Gonsewski.

**OPINION**

Facts

Johanna Gonsewski ("Wife") and Craig Gonsewski ("Husband") were married in Alabama on May 9, 1987, when they were both twenty-one years old. Their marriage lasted twenty-one years. The parties have two daughters, both of whom are now adults.

At the time of the marriage, Wife had recently graduated from Athens State College and was employed at Redstone Arsenal in Alabama. Husband was attending college at the University of Alabama. He graduated the following year, and shortly thereafter the couple moved to Tennessee because Husband had taken a job in Lewisburg as an accountant. They subsequently moved to Hendersonville, Tennessee, where they were living when these divorce proceedings began in 2007.

Both spouses worked throughout the marriage. At the time of the divorce in 2009, Wife was employed by the State of Tennessee, where she had worked for over sixteen years, in an information technology position. Husband, an accountant, had worked for a number of different employers since graduating from college, but has never been without a job for more than six weeks at a time. At the time of the divorce, he was employed as the comptroller of a manufacturer of stainless steel restaurant equipment where he had worked since 2004.

In 2008 – the year before the divorce – Wife's base salary with the State of Tennessee was $72,000.[2] She also received a longevity bonus of $1,500.[3] Husband's gross income in 2008 was $137,418 including a bonus of $33,115. He also received a bonus of $34,726 the year before in 2007. Husband testified that his 2007 and 2008 bonuses were unusually large due to exceptional business performance. He testified that if he hit his performance targets, he would expect approximately $120,000 in total compensation in 2009, but he stated that his employer was lagging far behind its projected numbers due to the state of the economy. His testimony was unclear as to what amount he expected to receive as a bonus in 2009.

---

[2] Although there is no dispute regarding the amount of Wife's income, Husband's testimony at trial suggested that her earning potential could be higher than his own in the private sector. Husband did not offer any specifics to support his conclusion other than to say that he knew "directors of IT . . . that can make a lot more than I do."

[3] Wife receives an annual longevity bonus of $100 for every year that she has been working for the State. See Tenn. Code Ann. § 8-23-206(a)(2)(A) (Supp. 2010).

On September 5, 2007, Wife filed a complaint for divorce. Husband stipulated that Wife was entitled to a divorce based on his inappropriate marital conduct. Both parties were forty-three years old at the time of trial on March 19, 2009. The couple's two daughters were living with Husband. Their younger daughter was to graduate from high school two months after the trial. Husband had taken out a loan to pay college expenses for their older daughter and planned to do the same for their younger daughter. He asked the trial court to award him his attorney's fees and expenses as a form of alimony, maintaining that Wife's actions had unnecessarily complicated and prolonged the case. Wife likewise sought an award of attorney's fees, along with spousal support, both temporary and permanent.

While the divorce was pending, each party filed papers with the trial court accusing the other of harassing behavior; they litigated numerous disputes concerning their children and assets; they accused each other of criminal contempt and perjury; and they sought restraining orders against each other. Both parties raised and pursued these matters vigorously, and it became necessary for the trial court to become involved in most of them before the case was even tried.

Against this backdrop, the trial court granted Wife's petition for divorce at the final hearing on the grounds of Husband's inappropriate marital conduct. The trial court classified certain personal property as separate property and divided equally between the parties the equity in the marital home, having a fair market value of approximately $400,000 and a mortgage of approximately $222,000. The trial court ordered the parties to each pay one half of the mortgage, taxes and insurance on the marital home pending its sale. The trial court divided the remaining marital property such that the total net value of the marital assets awarded to Husband was $189,198 and to Wife was $201,747. See Gonsewski v. Gonsewski, M2009-00894-COA-R3-CV, 2010 WL 565649, at *2 (Tenn. Ct. App. Feb. 17, 2010). The trial court determined that Wife was "not entitled to *Alimony in Futuro* or alimony for rehabilitative purposes," explaining that she had a stable job with the State, earned a good income, and that her share of the equity in the marital home was sufficient to find another residence. The trial court also declined to award attorney's fees to either party because much of the expense they incurred in litigating the case was due to numerous, unnecessary filings resulting in numerous, unnecessary court hearings. Competing petitions for contempt were denied.

The Court of Appeals affirmed the trial court's classification and division of the marital estate.[4] The intermediate appellate court reversed the trial court on the issue of spousal support and ordered Husband to pay Wife alimony in futuro in the amount of $1,250

---

[4] Neither party raises any issue in this Court concerning the classification and division of their real and personal property.

per month until her death or remarriage. The court reasoned that, although there was no need for economic rehabilitation given that Wife was a college graduate and had a steady career, alimony in futuro was "necessary to mitigate the harsh economic realities of divorce" due to the disparity in the parties' incomes. Id. at *5. The Court of Appeals also awarded Wife her attorney's fees and expenses, both in the trial court and on appeal, as a form of alimony in solido. The case was remanded to the trial court to determine the appropriate amount of attorney's fees and expenses to award.

Husband filed an application for permission to appeal challenging the awards of alimony in futuro and in solido. We granted review and, for the reasons explained below, reverse the Court of Appeals and reinstate the judgment of the trial court.

Standard of Review

For well over a century, Tennessee law has recognized that trial courts should be accorded wide discretion in determining matters of spousal support. See Robinson v. Robinson, 26 Tenn. (7 Hum.) 440, 443 (1846) ("Upon a divorce . . . the wife is entitled to a fair portion of her husband's estate for her support, and the amount thus to be appropriated is a matter within the legal discretion of the chancellor . . . ."). This well-established principle still holds true today, with this Court repeatedly and recently observing that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award. See, e.g., Bratton v. Bratton, 136 S.W.3d 595, 605 (Tenn. 2004); Burlew v. Burlew, 40 S.W.3d 465, 470 (Tenn. 2001); Crabtree v. Crabtree, 16 S.W.3d 356, 360 (Tenn. 2000).

Equally well-established is the proposition that a trial court's decision regarding spousal support is factually driven[5] and involves the careful balancing of many factors. Kinard v. Kinard, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); see also Burlew, 40 S.W.3d at 470; Robertson v. Robertson, 76 S.W.3d 337, 340-41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." Kinard, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." Broadbent v. Broadbent, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. Robertson, 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard,

---

[5] Appellate review of findings of fact by the trial court are "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding[s], unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d).

reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. Wright ex rel. Wright v. Wright, 337 S.W.3d 166, 176 (Tenn. 2011); Henderson v. SAIA, Inc., 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" Henderson, 318 S.W.3d at 335 (quoting Lee Medical, Inc. v. Beecher, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision. Wright, 337 S.W.3d at 176; Henderson, 318 S.W.3d at 335.

Analysis

*Spousal Support Framework*

*A.*

Spousal support in one form or another has been a part of Anglo-American divorce law for centuries. Prior to 1857, English ecclesiastical courts, which had jurisdiction over family matters, could grant divorces *a mensa et thoro,* known today as a divorce from bed and board or legal separation. See Wood v. Wood, 407 A.2d 282, 286 n.3 (Me. 1979); 2 Homer H. Clark, Jr., The Law of Domestic Relations in the United States § 17.1 (2d ed. 1987) ("The Law of Domestic Relations").[6] These courts would grant the wife alimony under the theory that, because the marriage bond remained undissolved, but the spouses were authorized to live apart, the husband's duty to support his family continued unabated. See Swan v. Harrison, 42 Tenn. (2 Cold.) 534, 541 (1865); The Law of Domestic Relations § 17.1. Absent an award of support, the wife would become destitute since she could not remarry, could not own property of her own, and employment opportunities for women, especially married women, were limited. The Law of Domestic Relations § 17.1; see also Reed v. Reed, 457 S.W.2d 4, 12 (Ky. Ct. App. 1970) (Osborne, J., dissenting).

In this country, courts imported the ecclesiastical court's practice of awarding spousal support, but expanded it to include absolute divorces. See The Law of Domestic Relations § 17.1. Tennessee was no exception, though alimony was originally permitted in this state

---

[6] Only Parliament could grant an absolute divorce until 1857 when this authority, along with the jurisdiction of the ecclesiastical courts, was placed in a secular divorce court. Wood, 407 A.2d at 286 n.3; The Law of Domestic Relations § 17.1.

only in cases involving a divorce from bed and board, on the theory that the parties were merely separated and thus not free to remarry. Consequently, it was appropriate to award support to the economically disadvantaged spouse. See Note, Tennessee Alimony Reform, 14 Mem. St. U. L. Rev. 219, 220 (1984). If the parties were granted an absolute divorce, Tennessee law required that support be made in the form of property division rather than periodic payments as is typically done today. See, e.g., Chenault v. Chenault, 37 Tenn. (5 Sneed) 248, 251 (1857) (in cases of absolute divorce, courts make a "reasonable division of the husband's estate" to provide for the wife's support). From an early date, then, Tennessee law has been averse to providing spousal support on a long-term basis when the marriage was completely dissolved. This view continues to be reflected in the state's current spousal support framework. See Tenn. Code Ann. § 36-5-121(d)(2)-(3) (2010) (reflecting a legislative preference favoring short-term spousal support over long-term spousal support).

It was not until the 1860s that Tennessee courts were permitted to order spousal support in the form of periodic payments as an alternative to property division in order to supply the economically disadvantaged spouse with the "necessaries suitable to her rank and condition in life." Swan, 42 Tenn. at 544. In addition, the practice of ordering spousal support from the husband's property only in bed and board divorces was changed during this time, such that support could be ordered in both bed and board and absolute divorces. Id. at 541-544. This support was to be paid "according to the nature of the case and the circumstances of the parties . . . for a limited time, or for life." Id. at 543. Further, the ordered support could "consist of a part of the husband's real or personal estate, or it may be charged upon the former, as the court may, in its sound discretion, under the circumstances of the case, think proper." Id. The courts also recognized that "[o]f course, no fixed rule can be laid down by which every case is to be governed" when determining the nature and amount of alimony. Stillman v. Stillman, 66 Tenn. (7 Baxter) 169, 183 (1874). The law then, as now, was that the need of spousal support, as well as its nature, amount, and duration, was "for the discretion of the [trial court], in view of the particular circumstances of each case." Id.

Once the early cases resolved threshold questions related to the type of divorce for which spousal support could be ordered and the form such an award could take, the courts' focus shifted to the amount to award and the length of time it should be paid. By the 1930s, for example, Tennessee courts had recognized that, although "[t]here are no hard and fast rules governing the amount of alimony," specific factors were to be considered in determining the appropriate amount. Walden v. Walden, 13 Tenn. App. 337, 344 (Tenn. Ct. App. 1930). These factors included the value of the separate property owned by the spouses, their age, income, "station in life," as well as the "way and manner in which the [marital] estate has been accumulated and contributions made thereto" by the parties. Id. The conduct of the parties and their relative fault was likewise deemed an appropriate factor to consider.

Id. See also Winslow v. Winslow, 133 Tenn. 663, 665 (1916).[7] The parties' standard of living could be considered as well. See, e.g., Williams v. Williams, 146 Tenn. 38, 45, 236 S.W. 938, 940 (1922).

*B.*

Although Tennessee spousal support law continued to be shaped and refined in the decades after these developments, the law as it exists today reflects most of these long-standing and almost universally accepted principles.[8] Current Tennessee law recognizes several distinct types of spousal support, including (1) alimony in futuro, (2) alimony in solido, (3) rehabilitative alimony, and (4) transitional alimony. Tenn. Code Ann. § 36-5-121(d)(1). In analyzing the present dispute, it is helpful to begin with an overview of each type.

The first type of spousal support, alimony in futuro, is intended to provide support on a long-term basis until the death or remarriage of the recipient. Tenn. Code Ann. § 36-5-121(f)(1). This type of alimony can be awarded where "the court finds that there is relative economic disadvantage and that rehabilitation is not feasible." Id. See also Burlew, 40 S.W.3d at 470-71; Riggs v. Riggs, 250 S.W.3d 453, 456 n.2 (Tenn. Ct. App. 2007). Alimony in futuro is appropriate when

> the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse.

Tenn. Code Ann. § 36-5-121(f)(1).

Alimony in futuro "is not, however, a guarantee that the recipient spouse will forever be able to enjoy a lifestyle equal to that of the obligor spouse." Riggs, 250 S.W.3d at 456 n.2. In many instances, the parties' assets and incomes simply will not permit them to achieve the same standard of living after the divorce as they enjoyed during the marriage. Robertson, 76 S.W.3d at 340. While enabling the spouse with less income "to maintain the

---

[7] Taking into account the fault of the parties was not unique to Tennessee and other states' law, for the practice was common in the English courts as well. See The Law of Domestic Relations § 17.1.

[8] As of 1998, almost all states provided for some type of periodic maintenance or alimony upon divorce. Katherine A. Kinser & R. Scott Downing, Family Law Issues that Impact the Professional Athlete, 15 J. Am. Acad. Matrim. Law 337, 367 (1998).

pre-divorce lifestyle is a laudable goal," the reality is that "[t]wo persons living separately incur more expenses than two persons living together." Kinard, 986 S.W.2d at 234. "Thus, in most divorce cases it is unlikely that both parties will be able to maintain their pre-divorce lifestyle . . . ." Id. It is not surprising, therefore, that "[t]he prior concept of alimony as lifelong support enabling the disadvantaged spouse to maintain the standard of living established during the marriage has been superseded by the legislature's establishment of a preference for rehabilitative alimony." Robertson, 76 S.W.3d at 340.

The second type of support, alimony in solido, is also a form of long-term support. The total amount of alimony in solido is set on the date of the divorce decree and is either paid in a lump sum payment of cash or property, or paid in installments for a definite term. Tenn. Code Ann. § 36-5-121(h)(1); Broadbent, 211 S.W.3d at 222 ("Alimony *in solido* consists of a definite sum of money that is paid in a lump sum or in installments over a definite period of time."). "A typical purpose of such an award would be to adjust the distribution of the parties' marital property." Burlew, 40 S.W.3d at 471. Alimony in solido "may be awarded in lieu of or in addition to any other alimony award, in order to provide support, including attorney fees, where appropriate." Tenn. Code Ann. § 36-5-121(d)(5). Unlike alimony in futuro, the other form of long-term support, alimony in solido is considered a final judgment, "not modifiable, except by agreement of the parties," and does not terminate upon the death or remarriage of the recipient or payor spouse.[9] Tenn. Code Ann. § 36-5-121(h)(2)-(3); see Riggs, 250 S.W.3d at 456 n.3.

In contrast to alimony in futuro, rehabilitative alimony is intended to assist an economically disadvantaged spouse in acquiring additional education or training which will enable the spouse to achieve a standard of living comparable to the standard of living that existed during the marriage or the post-divorce standard of living expected to be available to the other spouse. See Tenn. Code Ann. § 36-5-121(e)(1). See also Robertson, 76 S.W.3d at 340-41; Riggs, 250 S.W.3d at 456 n.4. Rehabilitative alimony thus serves the purpose of assisting the disadvantaged spouse in obtaining additional education, job skills, or training, as a way of becoming more self-sufficient following the divorce. Robertson, 76 S.W.3d at 340-41; Isbell v. Isbell, 816 S.W.2d 735, 738-39 (Tenn. 1991). This purpose is markedly different than the purpose of alimony in futuro, which is to provide long-term support when the economically disadvantaged spouse is unable to achieve self-sufficiency. Kinard, 986 S.W.2d at 234.

---

[9] An award of alimony in futuro remains in the court's control for the duration of the award and may be modified upon a showing of substantial and material change in circumstances. Tenn. Code Ann. § 36-5-121(f)(2)(A).

The fourth category of support, transitional alimony, is appropriate when a court finds that rehabilitation is not required but that the economically disadvantaged spouse needs financial assistance in adjusting to the economic consequences of the divorce. Tenn. Code Ann. § 36-5-121(d)(4), (g)(1); Riggs, 250 S.W.3d at 456 n.5. Simply put, this type of alimony "aid[s] the person in the transition to the status of a single person." Mills v. Mills, No. M2009-02474-COA-R3-CV, 2010 WL 3059170, at *5 (Tenn. Ct. App. Aug. 4, 2010); see also Montgomery v. Silberman, No. M2009-00853-COA-R3-CV, 2009 WL 4113669, at *2 (Tenn. Ct. App. Nov. 24, 2009) (affirming trial court's award of transitional alimony to wife "to bridge the gap, so to speak, between her married life and single life"); Engesser v. Engesser, 42 So. 3d 249, 251 (Fl. Dist. Ct. App. 2010) (en banc) (describing transitional alimony as "[b]ridge-the-gap alimony" designed to "smooth the transition of a spouse from married to single life"). In contrast to rehabilitative alimony, which is designed to increase an economically disadvantaged spouse's *capacity* for self-sufficiency, transitional alimony is designed to aid a spouse who already possesses the capacity for self-sufficiency but needs financial assistance in adjusting to the economic consequences of establishing and maintaining a household without the benefit of the other spouse's income. As such, transitional alimony is a form of short-term support. Transitional alimony is payable for a definite period of time and may be modified only upon certain circumstances: (1) the parties agree that it may be modified; (2) the court provides for modification in the divorce decree; or (3) the recipient spouse resides with a third person following the divorce. Tenn. Code Ann. § 36-5-121(g)(2).

The statutory framework for spousal support reflects a legislative preference favoring short-term spousal support over long-term spousal support, with the aim being to rehabilitate a spouse who is economically disadvantaged relative to the other spouse and achieve self-sufficiency where possible. See Tenn. Code Ann § 36-5-121(d)(2)-(3); Bratton, 136 S.W.3d at 605; Perry v. Perry, 114 S.W.3d 465, 467 (Tenn. 2003). Thus, there is a statutory bias toward awarding transitional or rehabilitative alimony over alimony in solido or in futuro. While this statutory preference does not entirely displace long-term spousal support, alimony in futuro should be awarded only when the court finds that economic rehabilitation is not feasible and long-term support is necessary. See Bratton, 136 S.W.3d at 605; Robertson, 76 S.W.3d at 341-42.

Finally, in determining whether to award spousal support and, if so, determining the nature, amount, length, and manner of payment, courts consider several factors:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

-9-

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i). Although each of these factors must be considered when relevant to the parties' circumstances, "the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay." Riggs, 250 S.W.3d at 457. See also Bratton, 136 S.W.3d at 605; Robertson, 76 S.W.3d at 342; Burlew, 40 S.W.3d at 470. Carefully adhering to the statutory framework for awarding spousal support, both in terms of awarding the correct type of support and for an appropriate amount and time, fulfills not only the statutory directives but also alimony's fundamental purpose of eliminating spousal dependency where possible.

*The Award of Alimony in Futuro*

Guided by the foregoing principles, we turn to the specific contentions made in this case. As noted, the trial court denied Wife's request for both short and long-term alimony, explaining that she had a stable job with the State, earned a good income, and that her share of the marital estate was sufficient for her to find another residence. The Court of Appeals

-10-

reversed and ordered Husband to pay Wife alimony in futuro in the amount of $1,250 per month until her death or remarriage. The intermediate appellate court reasoned that, although there was no need for economic rehabilitation given that Wife was a college graduate and had a steady career, alimony in futuro was "necessary to mitigate the harsh economic realities of divorce" due to the disparity in the parties' incomes.

Husband argues that the intermediate appellate court's decision blurs the distinction between alimony in futuro and transitional alimony. He points out that the decision essentially establishes a precedent whereby a spouse may be entitled to permanent support simply on the basis of a difference in income and regardless of age, good health, history of stable employment, lack of demonstrated need, and legislative preference for support other than permanent alimony. He also argues that the Court of Appeals substituted its judgment for that of the trial court without finding an abuse of discretion.

Wife responds that awarding permanent alimony is the only way to balance the "financial equities" of the parties. She, like the Court of Appeals, relies heavily upon the disparity in the parties' income. She also argues that Husband has the ability to pay the amount awarded. Finally, Wife points out that the demise of the marriage was Husband's fault.

We are persuaded that alimony in futuro should not have been awarded in this case. As noted, alimony in futuro is intended to provide support on a long-term basis if "the court finds that there is relative economic disadvantage and that rehabilitation is not feasible." Tenn. Code Ann. § 36-5-121(f)(1). See also Burlew, 40 S.W.3d at 471; Riggs, 250 S.W.3d at 456 n.2. In this context, rehabilitation means that "the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse." Tenn. Code Ann. § 36-5-121(f)(1). Here, Wife has a strong earnings record through the course of the marriage. The record is silent on what, if anything, Wife could or could not do to alter her earning capacity to permit her standard of living after the divorce to be reasonably comparable to the standard of living during the marriage. No evidence was presented regarding the prospect or feasibility of Wife making any "reasonable effort" in this regard as contemplated by section 36-5-121(f)(1). Moreover, little evidence, other than their income and expense statements, was presented concerning the parties' standard of living during the marriage – whether lavish, frugal, or somewhere in between. Nor was evidence presented regarding the post-divorce standard of living expected to be available to Husband. We are not inclined to speculate about these matters, which relate directly to the statutory standard for awarding permanent alimony.

-11-

What is established by the record is that Husband and Wife were married twenty-one years. They were both forty-three years old at the time of trial. They both have college degrees and worked throughout the marriage. Neither has a physical or mental condition that bears upon the alimony decision. There are no minor children that make employment outside the home undesirable or difficult. The parties received comparable shares of the marital property, with Wife receiving slightly more than Husband. Wife earns $72,000 a year (plus a longevity bonus), has been employed by the State of Tennessee for at least 16 years, and works in the field of information technology. Husband earns an annual $99,900 base salary. He receives bonuses that are contingent upon his and his employer's performance. His bonuses in the two years prior to the divorce were approximately $34,000 each, but he testified that the bonuses are likely to decrease due to the economic downturn and the completion of a long-term project. Husband also obtained loans to help the parties' children achieve a college education. The children reside with him when they are not in school. Husband had been ordered to pay Wife $1,206 during the pendency of the divorce as temporary spousal support, and he testified that, in his opinion, this support should have been sufficient to enable Wife to transition to her post-divorce standard of living so that no additional spousal support would be needed. The proof further showed that the parties made equal contributions to the marriage. Husband stipulated that Wife should be granted a divorce based upon his inappropriate marital conduct.

Wife introduced evidence showing a gross monthly income of $6,125 from her employment and monthly expenses of $7,978, including the full mortgage payment of $2,882.12 and a $506 child support obligation.[10] Husband introduced proof showing a gross monthly income in 2008 of $11,451 from his employment and monthly expenses of $7,521, including the pre-trial spousal support of $1,206. He received slightly less marital property than Wife, and is providing the parties' daughters money for college.

The trial court was aware of all of the foregoing facts and circumstances when it denied Wife's request for alimony in futuro. As indicated above, an appellate court should not reverse a trial court's alimony decision unless the trial court has abused its discretion. Broadbent, 211 S.W.3d at 220; Robertson, 76 S.W.3d at 343. This standard does not permit the appellate court to substitute its judgment for that of the trial court. Eldridge v. Eldridge, 42 S.W.3d 82, 85 (Tenn. 2001). Viewing the foregoing evidence in a light most favorable

_____

[10] The $506 child support obligation ended two months after the trial. Wife also included a clothing expense of $230, a recreation expense of $238, a food expense of $470, a beauty shop expense of $120, a housekeeping expense of $160, among other things. Husband's cross-examination of Wife questioned the necessity and reasonableness of these expenses. The trial court made no specific findings regarding the parties' alleged monthly expenses in its order granting the divorce.

to the trial court's decision, <u>Wright</u>, 337 S.W.3d at 176, we find no abuse of discretion in the trial court's decision not to award alimony in futuro.

We also note that the Court of Appeal's decision to grant alimony in futuro based on the facts of this case is inconsistent with this Court's decision in <u>Crabtree</u>, 16 S.W.3d at 357. In that case, this Court held that an award of alimony in futuro was unjustified even though the husband's income exceeded $400,000 and the wife earned $41,200 working part-time from home. <u>Id.</u> at 357 and n.1. The parties in <u>Crabtree</u> had been married for twenty-three years, and the wife was forty-three years old at the time of the divorce. The husband admitted to adultery and stipulated to the divorce on the ground of inappropriate marital conduct. The wife was a certified public accountant, and the husband testified that her actual earning potential was between $65,000 and $100,000 per year. This Court affirmed a grant of rehabilitative alimony for five years but, despite the husband's substantially higher earning capacity, held that "an award of alimony in futuro . . . [was] not justified and [did] not recognize or further the legislative purpose of encouraging divorced spouses to become self-sufficient." <u>Id.</u> at 360.

The same can be said of the present case, for the facts here offer even weaker support for awarding alimony in futuro than the facts in <u>Crabtree</u>. As in <u>Crabtree</u>, Wife was forty-three years old at the time of the divorce. Unlike the wife in <u>Crabtree</u>, Wife has been steadily employed, worked for the same employer for more than 16 years, and earns an annual salary of $72,000 (plus longevity bonus). Husband's income is also substantially lower than the husband's income in <u>Crabtree</u>. The Court of Appeals in this case observed "it is more likely than not" that Husband will continue to receive substantial bonuses "which will further the discrepancy in the earnings of the parties." <u>Gonsewski</u>, 2010 WL 565649, at *5. The record, however, does not support this conclusion. Husband testified the bonuses likely will decrease due to the economic downturn and the completion of a long-term project. No contrary evidence was introduced, leaving us with a record establishing that Husband's bonuses are uncertain and will probably decrease. In short, Wife has the ability to support herself and, absent an abuse of discretion, we are not inclined to second-guess the trial court's decision not to award alimony in futuro. While we recognize that the record demonstrates a likelihood that Husband's income may continue to exceed Wife's by some extent, and that Wife's post-divorce lifestyle may decline to some extent, we are not willing to overrule the trial court on this basis. The economic realities are such that it is likely that Husband's standard of living will also decline as he establishes a separate household without Wife's income. We reiterate that "[t]wo persons living separately incur more expenses than two persons living together. Thus, in most divorce cases it is unlikely that both parties will be able to maintain their pre-divorce lifestyle once the proceedings are concluded." <u>Kinard</u>, 986 S.W.2d at 234.

Husband asked the trial court to award him his attorney's fees and expenses as a form of alimony, maintaining that Wife's actions had unnecessarily complicated and prolonged the case. Wife likewise sought an award of attorney's fees. The trial court declined to make such an award to either party because much of the expense they incurred in litigating the case was due to numerous, unnecessary filings resulting in numerous, unnecessary court hearings. The Court of Appeals reversed and awarded Wife her attorney's fees and expenses, both in the trial court and on appeal, as a form of alimony in solido. In our view, this was error.

It is well-settled that an award of attorney's fees in a divorce case constitutes alimony in solido. See Tenn. Code Ann. § 36-5-121(h)(1) ("alimony in solido may include attorney fees, where appropriate"); Herrera v. Herrera, 944 S.W.2d 379, 390 (Tenn. Ct. App. 1996). The decision whether to award attorney's fees is within the sound discretion of the trial court. Crabtree, 16 S.W.3d at 361; Kincaid v. Kincaid, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995). As with any alimony award, in deciding whether to award attorney's fees as alimony in solido, the trial court should consider the factors enumerated in Tennessee Code Annotated section 36–5–121(i). A spouse with adequate property and income is not entitled to an award of alimony to pay attorney's fees and expenses. Umstot v. Umstot, 968 S.W.2d 819, 824 (Tenn. Ct. App. 1997). Such awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, see Houghland v. Houghland, 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992), or the spouse would be required to deplete his or her resources in order to pay them, see Harwell v. Harwell, 612 S.W.2d 182, 185 (Tenn. Ct. App. 1980). Thus, where the spouse seeking such an award has demonstrated that he or she is financially unable to procure counsel, and where the other spouse has the ability to pay, the court may properly grant an award of attorney's fees as alimony. See id. at 185.

Under the facts of this case, we have determined that the award of attorney's fees as alimony in solido was unwarranted. At the time of the divorce, Wife had been steadily employed for more than 16 years with the same employer, was earning an annual salary of at least $72,000, and was working in the field of information technology. Moreover, she had a college education, received more of the marital estate than Husband and, as far as this record shows, is physically and mentally healthy. The record contains nothing to suggest that Wife was unable to secure counsel, either at trial or on appeal, but for an award of attorney's fees.

Furthermore, the procedural history of this case militates against an award of attorney's fees and expenses. Once the divorce proceeding was underway, both parties filed papers with the trial court accusing the other of harassing behavior, such as unplugging telephone cords in their house, interfering with the other's use of the family computer,

placing a plant on top of Wife's car, making too many calls in rapid succession to Husband's cell phone, and preventing one of their teenagers from having access to her clothes. They litigated disputes over a ski trip involving their daughters, the forwarding of emails from their home computer, car insurance for their children, Husband's access to his deer hunting equipment, and whether certain pleadings should be stricken from the record. They accused each other of criminal contempt, committing perjury, sought restraining orders, and had disputes over whether Wife's lawyer should be disqualified and who should pay $17.29 to a lawn service business for a driveway repair. They had disagreements over discovery, custody, child support, spousal support, a tax refund, insurance proceeds, and whether Husband should be permitted to bring his girlfriend around the parties' daughters. Most of these matters, which were raised and pursued by both parties, required the attention of the trial court before the case was even tried.

In view of these circumstances, we have no difficulty concluding that the trial court acted within its discretion in denying either party their attorney's fees and expenses. We fully agree with the trial court that each party should bear the expense of his or her litigiousness in what should have been a relatively uncomplicated, routine divorce proceeding. Consequently, we conclude that the award of attorney's fees by the Court of Appeals was error.

*Transitional Alimony*

In her prayer for relief, Wife sought "spousal support, both temporarily and permanently." At trial, Wife testified that she was seeking "alimony in solido" in an unspecified amount from Husband's share of the equity in the marital residence and additional alimony of $1,500 per month. Neither in her complaint for divorce nor during her testimony did she specifically seek transitional alimony. The trial court denied Wife's demands for both in solido and periodic alimony. Although the trial court did not reference specifically transitional alimony in its order, its denial of any alimony in light of Wife's request for both lump sum and periodic alimony was sufficient, we hold, to include a denial of transitional alimony.[11]

We also hold that the trial court did not abuse its discretion in denying transitional alimony. As set forth above, our legislature has declared that transitional alimony is to be awarded "when the court finds that rehabilitation is not necessary, but the economically

_____

[11] While it is not required by our Rules of Civil Procedure, we point out that it may be prudent for parties to set forth in their pleadings the specific types of alimony sought. It would also be helpful for trial courts to make specific reference to the particular types of alimony considered and ruled upon, including the factors supporting the ruling(s).

disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce." Tenn. Code Ann. § 35-5-121(d)(4). For instance, in Gordon v. Gordon, the Court of Appeals considered a situation in which the wife had "considerable earning capacity" but was "temporarily without a well-paying job." No. E2010-00392-COA-R3-CV, 2010 WL 4244345, at *5 (Tenn. Ct. App. Oct. 27, 2010). Recognizing that, "[g]iven [the wife's] age, health, education, intelligence, skills, industrious nature, occupations and employment history, there is every reason to believe that her lack of a desirable job will be short-lived," id., the intermediate appellate court characterized the case as an "ideal" one for transitional alimony, id. at *6. Accordingly, the Court of Appeals modified the trial court's award to the wife of alimony in futuro to an award of twenty-four months of transitional alimony. Id.

The instant case, in contrast, presents a very different scenario. As emphasized by the trial court in its denial of alimony, Wife has a stable work history with a stable income of more than $70,000 per year. She also obtained a greater share of the marital assets, receiving approximately $200,000. She is young, in good health, and college educated. She received pendente lite spousal support of $1,200 per month for sixteen months prior to the divorce hearing. Also, Husband was ordered to pay for one-half of the mortgage, taxes and insurance for the ninety days following the divorce during which Wife was permitted to remain in the marital residence.[12]

We emphasize that, "[w]hile there is no absolute formula for determining the amount of alimony, 'the real need of the spouse seeking the support is the single most important factor.'" Aaron v. Aaron, 909 S.W.2d 408, 410 (Tenn. 1995) (quoting Cranford v. Cranford, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989)). See also Riggs, 250 S.W.3d at 456 n.5 (stating that transitional alimony is appropriate "when a court finds that rehabilitation is not necessary but that the economically disadvantaged spouse needs assistance adjusting to the economic consequences of divorce"). In our view, Wife has not demonstrated that she is in need of additional financial assistance in order to adjust to the economic consequences of her divorce. Moreover, while there is some disparity in the parties' income, the proof at trial established that this disparity was likely to be reduced significantly by the overall economic climate. The trial court duly considered Wife's request for temporary and permanent alimony in light of the appropriate factors and in light of the specific facts and circumstances of the case and deemed that no form of alimony was appropriate. The record does not persuade us that the trial court thereby abused its discretion, and we affirm its denial of transitional alimony to Wife.

---

[12]  In its final order granting the divorce, the trial court ordered the parties each to pay one-half of the mortgage payment until the property was sold. Although Wife's brief to this Court states that the marital residence "has now been sold," the record contains no details about the sale.

## Conclusion

Based upon our review of the record and applicable legal principles, we conclude that the Court of Appeals's awards of alimony in futuro and in solido are inappropriate in this case. Transitional alimony is also not appropriate. We therefore reverse the Court of Appeals and reinstate the judgment of the trial court. In the interests of justice, the costs are taxed one-half to each party and their sureties, for which execution may issue if necessary.

_____

CORNELIA A. CLARK, CHIEF JUSTICE