IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 9, 2020 Session

## ANTONIO MAURICE WIGGINS V. CAROL ANN WIGGINS

**Appeal from the Chancery Court for Montgomery County**
**No. MC-CH-CV-DI-19-6      Ted A. Crozier, Chancellor**

_____

### No. M2019-02006-COA-R3-CV

_____

This appeal arises out of a divorce action in which the wife requested alimony. Following a trial, the trial court awarded the wife alimony in futuro and alimony in solido to assist her in paying for health insurance premiums and attorney's fees, respectively. On appeal, the husband claims the wife had no need for such support; rather, the trial court used the alimony awards as a means to punish the husband for his infidelity. We find that, while the trial court considered the husband's fault in making its decision, it did so in conjunction with other relevant factors in accordance with Tenn. Code Ann. § 36-5-121(i), including the wife's financial need, her relative earning potential, her contributions to the marriage, and the parties' standard of living. Having determined that the trial court applied the correct legal principles, made factual findings supported by the evidence in the record, and reached a decision within the range of acceptable dispositions, we affirm the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Sharon T. Massey, Clarksville, Tennessee, for the appellant, Antonio Maurice Wiggins.

Kimberly G. Turner, Clarksville, Tennessee, for the appellee, Carol Ann Wiggins.

### OPINION

Antonio Maurice Wiggins ("Husband") and Carol Ann Wiggins ("Wife") married on December 3, 2003, in Las Vegas, Nevada. Husband served in the United States Army on active duty for nine and a half years of the marriage and later retired after 26 years of service. Husband earned a bachelor's degree and worked at the Department of Defense Retirement Services as a GS-5 at Fort Campbell, Kentucky. Wife earned a high school diploma, had some college education, and worked for the Department of Defense as a

civilian contractor. The couple purchased a home in Clarksville, Tennessee, and had no children together. At the time of the final divorce hearing, Wife was 49 years old and Husband was 50 years old.

Husband filed for divorce on January 2, 2019, in Montgomery County Chancery Court alleging irreconcilable differences as the only ground. Wife filed an answer and counter complaint on January 31, 2019, alleging irreconcilable differences and inappropriate marital conduct. Husband filed an answer to Wife's counter complaint denying inappropriate marital conduct.

The parties participated in mediation with a Rule 31 mediator and agreed to the division of their personal property, debts, bank accounts, taxes for 2018, and retirement accounts. As for the retirement accounts, the parties agreed Wife would receive 18.43% of Husband's military retirement, and they would each retain their respective 401(k) accounts, with Wife's account valued at $10,000 and Husband's account valued at $13,500. When addressing their debts, the parties agreed Husband would be responsible for the $25,000 debt they owed for installing a swimming pool, and Wife would be responsible for the $27,000 debt they owed on a Jeep Cherokee. They reserved the issues of alimony and the division of the proceeds from the sale of their home for the trial.

The court held a trial on September 9, 2019, and entered a Final Decree of Divorce on October 11, 2019. At the trial, Husband admitted to engaging in three extra-marital affairs, the first occurring just two years after the parties married, the second occurring in 2010 and lasting for a year or two, and the third occurring in 2018. Based on Husband's testimony, the court granted the divorce to Wife on the ground of inappropriate marital conduct.

The court approved the parties' mediated agreement and ordered Husband and Wife to sell their home and to split the proceeds equally. In the interim, Husband would have exclusive possession of the home and pay the mortgage.

As for Wife's requests for alimony in futuro, transitional alimony, and alimony in solido, after considering the factors listed in Tenn. Code Ann. § 36-5-121(i), the court determined Wife was the economically disadvantaged spouse based on her gross monthly income of $4,861 with no benefits and Husband's gross monthly income of $9,240.68 with substantial health and retirement benefits. Finding that Wife would lose her health insurance benefits and, based on Wife's testimony, the most comparable insurance plan would cost Wife more than $1,000 per month in premiums, the court ordered Husband to pay Wife $700 per month in alimony in futuro to assist Wife in paying for health insurance. Furthermore, recognizing that Wife intended to use the proceeds from the sale of the parties' home as a down payment on a new home and that she could not buy a home until receiving her share of the proceeds, the court ordered Husband to pay Wife $650 per month in transitional alimony for 36 months to assist Wife with the transition in housing.

The court also awarded Wife her attorney's fees in the form of alimony in solido finding as follows:

> The Husband is at fault for the demise of the marriage. The Wife testified that she did not want this divorce and that she asked the Husband to attend counseling with her. The Wife has forgiven the Husband's infidelity two times in the past and it appears she would have forgiven the Husband again had he gone to counseling and worked on the marriage. As the Husband's actions caused the demise of this marriage and the Husband filed for divorce, the Wife is hereby awarded her attorney's fees in the amount of $7,500.00 as alimony *in solido*. . . .

This appeal followed.

## ANALYSIS

On appeal, Husband only takes issue with the court's award of alimony in futuro and alimony in solido.[1]

Trial courts "have broad discretion to determine whether spousal support is needed and, if so, the nature, amount and duration of the award." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). A trial court's decision to award spousal support "is factually driven and involves the careful balancing of many factors." *Id*. (footnote and citations omitted). For that reason, appellate courts will not second-guess a trial court's decision regarding spousal support. *Id*. However, a trial court's decision is not immune from any meaningful appellate scrutiny. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

> [R]eviewing courts should review a [trial] court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions. When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the [trial] court's legal determinations de novo without any presumption of correctness.

---

[1] Husband does not challenge the award of transitional alimony.

*Id.* at 524–25 (internal citations omitted).

Tennessee recognizes four distinct types of spousal support: (1) alimony in futuro, (2) alimony in solido, (3) rehabilitative alimony, and (4) transitional alimony. *Gonsewski*, 350 S.W.3d at 107. As previously stated, Husband takes issue with the court's award of alimony in futuro and alimony in solido.

Alimony in futuro is awarded to provide long-term spousal support and continues until the death or remarriage of the recipient. *Id*. (citing Tenn. Code Ann. § 36-5-121(f)(1)). An award of alimony in futuro "is appropriate when the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse." *Id*. at 107–08 (quoting Tenn. Code Ann. § 36-5-121(f)(1)).

An award of attorney's fees in a divorce case constitutes alimony in solido. *Id*. at 113. Such an award "is appropriate only when the spouse seeking [attorney's fees] lacks sufficient funds to pay his or her own legal expenses, or the spouse would be required to deplete his or her resources in order to pay them." *Id*. (internal citations omitted).

When determining whether to award spousal support and, if so, the type and amount of the award, the court considers the following non-exclusive factors:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
(3) The duration of the marriage;
(4) The age and mental condition of each party;
(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
(7) The separate assets of each party, both real and personal, tangible and intangible;
(8) The provisions made with regard to the marital property, as defined in § 36-4-121;
(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i).

## I. ALIMONY IN FUTURO

Husband contends the award of alimony in futuro was punitive in nature as the trial court improperly focused on his infidelity rather than on Wife's need. Husband argues that, had the court considered Wife's substantial earnings after the divorce, which included a portion of Husband's retirement benefits, and her frivolous expenses, the court would have determined Wife had no need for $700 per month in alimony in futuro. For her part, Wife contends the trial court properly considered the relevant factors found in § 36-5-121(i) and correctly determined that Wife needed assistance in paying for health insurance.

The testimony and other evidence in the record established that Husband, at the age of 50, had a college degree and a long history of military service, which entitled him to health insurance, retirement benefits, and gross earnings totaling $9,282.35 per month. In contrast, the evidence showed that, at the age of 49, Wife had no college degree and earned $4,497.72 per month with no benefits. Wife also testified that her job as a civilian contractor was subject to annual renewal; consequently, it was not secure. Thus, the court found that Husband had a greater earning potential than Wife.

Additionally, the court found that Wife and Husband made equal tangible and intangible contributions to their 16-year marriage, and they enjoyed a high standard of living. Both parties testified that they maintained a comfortable lifestyle. Husband testified that he and Wife were able to purchase his "dream home" with over 3,500 square feet. And Wife testified that they had a swimming pool installed in the backyard, which she described as her "sanctuary."

Wife also testified that, during the marriage, she and Husband received Tri-Care health insurance through the military and paid no premiums, no deductible, no co-pay, and there was no maximum coverage. Wife testified she could continue her coverage with Tri-Care after the divorce through COBRA for $600 per month for 36 months. Thereafter, Wife could obtain health insurance through her employer for $500 per month with a $3,000 deductible, high out-of-pocket costs, and a maximum coverage limit, or Wife could obtain a plan through the marketplace. According to Wife, the most comparable plan to Tri-Care

through the marketplace would cost approximately $1,136 per month. Conversely, Husband would retain his comprehensive coverage through Tri-Care, post-divorce, at no cost to him.

Taking the foregoing factors into account, along with the finding that Husband was at fault for the demise of the marriage—a permissible consideration under Tenn. Code Ann. § 36-5-121(i)(11)—the court determined that Wife was entitled to $700 per month in alimony in futuro to assist her in paying for health insurance premiums.

Husband argues the court erred in finding that Wife was the economically disadvantaged spouse because the court failed to consider Wife's post-divorce award of a portion of Husband's retirement earnings. Specifically, he claims that, with the addition of 18.43% of his retirement earnings, Wife's monthly, post-divorce, gross earnings totaled $5,016.52 and Husband's totaled $8,763.55.[2] Husband further argues that, in failing to consider Wife's frivolous expenses in awarding alimony in futuro, the trial court attempted "to assist Wife in maintaining a lifestyle that she wanted but did not need." We disagree with Husband's characterization of the trial court's decision. The court awarded Wife $700 per month to pay for health insurance, a need, not a want.

While Husband's infidelity factored into the trial court's decision, it is clear the court's objective in awarding alimony in futuro was not to punish Husband for his actions but to assist Wife in achieving a post-divorce standard of living comparable to Husband's—the stated purpose of alimony in futuro. *See* Tenn. Code Ann. § 36-5-121(f)(1). Further, even if the trial court considered the retirement benefit Wife was to receive, it does not change Wife's status as the economically disadvantaged spouse.

Thus, we find that the trial court considered the relevant factors found in § 36-5-121(i), made factual findings supported by the testimony and other evidence in the record, and reached a decision within the range of acceptable dispositions. Accordingly, we affirm the trial court's decision to award Wife $700 per month in alimony in futuro to assist her in paying for health insurance.

## II. ALIMONY IN SOLIDO

Husband contends the court's award of $7,500 in attorney's fees to Wife was also punitive due to the court's focus on Husband's infidelity and the court's failure to make factual findings concerning Wife's ability to pay her own attorney's fees. Wife argues the

---

[2] According to Husband's calculations, Wife would receive $518.80 per month of his retirement earnings. In her testimony, Wife estimated that she would receive approximately $510 per month as her share of Husband's military retirement.

preponderance of the evidence established she was the economically disadvantaged spouse and needed assistance in paying her attorney's fees.

At the trial, Wife estimated that, post-divorce, her monthly income, less taxes, amounted to approximately $4,093.22.[3] Wife testified to and entered an itemized expense statement into evidence, which showed her estimated monthly expenses, post-divorce, totaled $6,042.94. Additionally, she testified that she accrued $8,000 in attorney's fees. Husband argued that, had the trial court subtracted Wife's needless expenses, her monthly expenses would only add up to $4,079. Either way, we find that Wife's monthly expenses and attorney's fees are significant considering her disposable income. Therefore, the evidence established that Wife lacked the financial means to pay her attorney's fees. Her monthly income, at best, equaled her expenses, and her only nest egg was a modest IRA account valued at $10,000.

As for Husband's argument that the trial court improperly focused on his infidelity, as we stated previously, the trial court may consider fault under § 36-5-121(i)(11), though the primary focus must be the spouse's need for such support. *See Gonsewski*, 350 S.W.3d at 113. In addition to establishing Wife's need, the testimony also established Wife did not want the divorce and was willing to forgive Husband for his infidelity, but Husband refused to attend counseling at Wife's request. Similarly, in *Olinger v. Olinger*, this court affirmed an award of attorney's fees to the wife reasoning, "As a practical matter, had husband not 'strayed,' there would probably not have been a divorce and no attorney's fees to be paid in the first place." 585 S.W.3d 919, 923 (Tenn. Ct. App. 2019).

Thus, for the foregoing reasons, we affirm the trial court's award of attorney's fees to Wife in the form of alimony in solido.

## In Conclusion

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Antonio Maurice Wiggins.

_____
FRANK G. CLEMENT JR., P.J., M.S.

---

[3] This estimation included Wife's portion of Husband's retirement benefit.