FILED

07/21/2022

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 9, 2022 Session

## BRIAN PATRICK HENRY v. JENNIFER KAY McCORMACK

**Appeal from the Probate and Juvenile Court for Dickson County**
**No.     01-18-001-PAT      Michael Meise, Judge**
_____

**No. M2019-02065-COA-R3-JV**
_____

This is an appeal from the trial court's entry of a permanent parenting plan involving one minor child.  The mother appeals the trial court's designation of the father as the primary residential parent of the minor child.  We vacate the trial court's determination and remand for sufficient findings of fact to facilitate appellate review.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate and Juvenile Court Vacated; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Brandi L. Jones, Springfield, Tennessee, for the appellant, Jennifer Kay McCormack.

Robert J. Turner and Emily G. Pfeiffer, Nashville, Tennessee, for the appellee, Brian Patrick Henry.

**MEMORANDUM OPINION[1]**

Jennifer Kay McCormack ("Mother") and Brian Patrick Henry ("Father") briefly dated before Mother became pregnant with the Child at issue. The parties ended their relationship shortly after conception, citing a disagreement concerning Mother's nutrition while pregnant. Father returned to New York, where he was employed, while Mother remained in Tennessee. Mother eventually ceased all contact with Father and blocked all forms of communication. The Child was born in September 2017. Father contacted the maternal grandmother, who encouraged Mother to facilitate a relationship between the Child and Father. Mother agreed and invited Father to meet the Child in Tennessee.

Father first met the Child on October 14, 2017, at a local restaurant. The parties devised a plan for Father to establish a relationship with the Child. Father returned to New York to settle his affairs and then came to live in Tennessee. He rented a trailer from the maternal grandparents for a short period of time before ultimately finding his own residence. He assisted Mother with the day-to-day care of the Child. This arrangement continued for a few months until the parties had yet another disagreement in December 2017. Mother again refused contact with Father following this disagreement.

On January 2, 2018, Father filed, inter alia, a petition to establish paternity and to enter a permanent parenting plan. A flurry of litigation ensued. The court granted Father temporary co-parenting time during the pendency of the litigation. In an attempt to assuage Mother's concerns, Father submitted breathalyzer results to her prior to his co-parenting time with the Child. Mother explained to the court that she was concerned about his sobriety, while Father raised questions concerning Mother's mental stability. The court added the breathalyzer requirement to its order but also instructed Father to submit to an alcohol and drug assessment and Mother to submit to a mental health assessment. Upon receiving the results of both assessments, the court rescinded the breathalyzer requirement.

Despite the exhaustive litigation between the parties, the two parents submitted to mediation and eventually agreed to equal co-parenting time, alternating weekly with a two-hour visitation on Wednesdays for the party not currently exercising his or her weekly time. However, the parties could not come to an agreement concerning the designation of the primary residential parent, along with a few other matters not pertinent to this appeal.

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

- 2 -

The matter proceeded to hearing on November 1, 2018, where it was established that the relationship between the parties remained acrimonious, at best. They had disagreements concerning the scheduling of the Wednesday visitation and the general exchange of the Child, that even led one babysitter to cease her employment for the parties. Each parent then maintained a separate babysitter and fought often concerning the exchange of the Child and his general well-being. The court advised the parties, at numerous points throughout the hearing and the litigation in general, to work together for the good of the Child. Despite this, neither party would even admit that the other loved and cared for the Child, each maintaining their own superior care and love for the Child.

Following the hearing, the court designated the Father as the primary residential parent, citing Mother's past withholding of the Child from Father and questioning her ability to work together and encourage his relationship with the Child.

This appeal followed the resolution of exhaustive post-trial motions filed by the parties. The sole and dispositive issue on appeal is whether the trial court abused its discretion in its designation of Father as the Child's primary residential parent.

In non-jury cases such as this one, we review the trial court's factual findings de novo upon the record, affording them a presumption of correctness unless the evidence preponderates otherwise. *See* Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). We review questions of law de novo, affording the trial court's decision no presumption of correctness. *Armbrister*, 414 S.W.3d at 692 (citing *Mills v. Fulmarque*, 360 S.W.3d 362, 366 (Tenn. 2012)).

Trial courts have "broad discretion in formulating parenting plans" because they "are in a better position to observe the witnesses and assess their credibility." *C.W.H. v. L.A.S.*, 538 S.W.3d 488, 495 (Tenn. 2017) (citing *Armbrister*, 414 S.W.3d at 693). "A trial court's broad discretion on custody matters extends to the question of which parent should be named primary residential parent." *Grissom v. Grissom*, 586 S.W.3d 387, 391 (Tenn. Ct. App. 2019). On appeal, we review a trial court's decision regarding the details of a residential parenting schedule for an abuse of discretion. *Armbrister*, 414 S.W.3d at 693 (citing *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001)). "An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). "A trial court abuses its discretion in establishing a residential parenting schedule 'only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record.'" *Armbrister*, 414 S.W.3d at 693 (quoting *Eldridge*, 42 S.W.3d at 88).

Mother takes issue with the trial court's application of the best interest analysis in designating Father as the primary residential parent. In setting the residential schedule, the

trial court is directed to conduct a best interest analysis based upon the factors found in Tennessee Code Annotated section 36-6-106(a)(1)–(15). Tenn. Code Ann. § 36-6-404. These factors include:

(1)     The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;

(2)     Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents . . . to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child.  In determining the willingness of each of the parents . . . to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent . . . to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent . . . *denying parenting time to either parent in violation of a court order*;

(3)     Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4)     The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5)     The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6)     The love, affection, and emotional ties existing between each parent and the child;

(7)     The emotional needs and developmental level of the child;

(8)     The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child;

(9)     The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11) Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13) The reasonable preference of the child if twelve (12) years of age or older . . .;

(14) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15) Any other factors deemed relevant by the court.

Tenn. Code Ann. § 36-6-106(a)(1)–(15) (emphasis added).[2] Although the court was obligated to consider the applicable statutory factors, "the statute does not require a trial court, when issuing a memorandum opinion or final judgment, to list every applicable factor along with its conclusion as to how that particular factor impacted the overall custody determination." *Burnett v. Burnett*, No. E2002-01614-COA-R3-CV, 2003 WL 21782290, at *6 (Tenn. Ct. App. July 23, 2003).

The record reflects that the trial court listed each factor and found each equally weighted or inapplicable, with the exception of its concerns related to the parties' ability to work together. The court ultimately found that Mother's past withholding of the Child was the "determining factor" in its designation of Father as the primary residential parent pursuant to Tennessee Code Annotated section 36-6-106(a)(2).

Mother claims that this was error because her alleged withholding of the Child was not in violation of a court order as contemplated by Section 36-6-106(a)(2). She explains that her actions occurred before Father even established his paternity and the parenting plan was established. Father argues that the court may consider Mother's past refusal to facilitate a relationship in making its determination, regardless of whether it occurred prior to the filing of the petition and the entry of a parenting plan.

---

[2] Effective March 18, 2022, the General Assembly has amended Tennessee Code Annotated § 36-1-113(i) by adding a new subdivision for the court's consideration, requiring the court to consider 16 factors. *See* 2022 Tenn. Pub. Acts, Ch. 671 § 1 (H.B. 1866). However, because the petition in this case was filed before the effective date of the amendment, the statutory best interest factors provided in the prior version of the statute apply here. *See, e.g.*, *In re Braxton M.*, 531 S.W.3d 708, 732 (Tenn. Ct. App. 2017).

- 5 -

We find the trial court's application of Factor 2 troublesome when the statute itself directs consideration of the likelihood of each parent to adhere to court ordered parenting arrangements and any violation of a court order concerning those arrangements. The record reflects that Mother adhered to the parenting plan once entered and has not violated a court order. The court's application of this factor was error.

In so holding, we must also acknowledge that Tennessee Code Annotated section 36-6-102(a)(15) permits consideration of any factor deemed relevant by the trial court, which may include Mother's past behavior prior to the entry of a court ordered parenting plan. However, given the court's stated reliance upon Factor 2 alone as the "determining factor" and the lack of additional findings of fact, save for the general concern related to the parties' ability to work together, we must hold that the trial court's decision "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence in the record." *Eldridge*, 42 S.W.3d at 88.

We vacate the ruling and remand this matter to the trial court to issue sufficient findings of fact and conclusions of law based upon a proper application of the aforementioned statutory factors. We recognize that time has marched on during this litigation. The trial court may, in its discretion, consider additional evidence to ensure that the parenting plan is based on the Child's and the parties' current circumstances. *See, e.g.*, *Kathryne B.F. v. Michael B.*, No. W2013-01757-COA-R3-CV, 2014 WL 992110, at *7 (Tenn. Ct. App. Mar. 13, 2014). All other issues are pretermitted by this court's determination.

## CONCLUSION

For the reasons stated above, we vacate the decision of the trial court. The case is remanded for entry of findings of fact and any such further proceedings that may be necessary. Costs of the appeal are taxed one-half to the appellant, Jennifer Kay McCormack, and one-half to the appellee, Brian Patrick Henry.

_____
JOHN W. MCCLARTY, JUDGE