# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### December 02, 2014 Session

## TRACY DIANE BOLTON v. WILLIAM JEFF BOLTON

**Appeal from the Chancery Court for Maury County**
**No. 11026    Jim T. Hamilton, Judge**

_____

**No. M2013-01894-COA-R3-CV - Filed February 5, 2015**

_____

This divorce action follows a long-term marriage of nearly twenty-five years. Husband appeals the trial court's property division, determination of his income, award of transitional alimony to Wife, and the award of attorney's fees to Wife. We affirm.

**Tenn R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ARNOLD B.GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

James M. Marshall, Spring Hill, Tennessee, for the appellant, William Jeff Bolton.

George Clark Shifflett, III, Columbia, Tennessee, for the appellee, Tracy Diane Bolton.

## MEMORANDUM OPINION[1]

### I. Background and Procedural History

Plaintiff/Appellee Tracy Diane Bolton ("Ms. Bolton") and Defendant/Appellant William Jeff Bolton ("Mr. Bolton") were married in 1989 and have one minor child. Ms. Bolton has a degree in dental hygiene and works as a dental hygienist. Mr. Bolton is a high school graduate and the owner and operator of a business called Automotive Aftermarket, d/b/a Mr. Transmission. There is one Mr. Transmission located in

---

[1]

Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Murfreesboro, Tennessee, with another one located in Hermitage, Tennessee. Mr. Bolton also owns an Alta Mere window tinting service which operates out of the Murfreesboro location for Mr. Transmission. Ms. Bolton is 46 years of age; Mr. Bolton is 49 years of age.

In January 2011, Ms. Bolton filed a complaint for divorce in the Chancery Court for Maury County. She alleged as grounds for divorce that Mr. Bolton was guilty of inappropriate marital conduct or, alternatively, that irreconcilable differences existed. She prayed that the court make an equitable division of the marital assets and debts and further requested that she be granted alimony and attorney's fees.

Mr. Bolton answered Ms. Bolton's complaint in February 2011. In his answer, Mr. Bolton admitted that irreconcilable differences existed between the parties but denied that he was guilty of inappropriate marital conduct. In a counter-complaint for divorce filed on the same day as his answer, Mr. Bolton asserted that Ms. Bolton was guilty of inappropriate marital conduct, while also asserting irreconcilable differences as alternative grounds for divorce. Although Mr. Bolton also prayed for an equitable division of the marital assets and debts, he did not specifically request that the court award him alimony. Ms. Bolton later filed an answer to Mr. Bolton's counter-complaint, wherein she denied that she was guilty of inappropriate marital conduct.

The divorce hearing took place on February 28, 2013. As the parties had already agreed to stipulate to grounds for divorce, no proof was heard concerning the relative fault of the parties. Instead, the hearing largely consisted of hearing proof concerning Mr. Bolton's income and the value of his businesses.

On April 3, 2013, a little over a month after the divorce hearing, the parties were awarded an absolute divorce by entry of the trial court's "Order of Divorce". In addition to severing the matrimonial bond between the parties, this order approved a permanent parenting plan that had been entered into between the parties, determined the parties' income levels for purposes of setting child support, divided the marital assets and debts between the parties, awarded Ms. Bolton transitional alimony, and awarded Ms. Bolton attorney's fees as alimony *in solido*. In reaching a conclusion regarding the distribution of assets between the parties, the trial court noted that the long-term nature of the marriage carried with it a presumption of equal division of marital assets. The court also noted that, in light of the absence of testimony that either party would change professions upon the granting of the divorce, it anticipated the parties' current earnings would continue in the future. It further found that Ms. Bolton's ability to acquire future capital assets was limited by her experience and current employment but found that Mr. Bolton's ability to acquire future capital assets and income was only limited by the amount of work he was willing to put in his businesses. When specifically considering Mr. Bolton's businesses in connection with the overall distribution of assets, the trial court found that Mr. Bolton's value of his businesses was not credible and instead accepted the business

2

valuation that had been testified to by an expert for Ms. Bolton. All right, title, and ownership in Mr. Bolton's businesses was vested in him pursuant to the court's division of assets. When determining Mr. Bolton's income for purposes of setting child support, the trial court found that he was not a credible witness and noted that his reported income did not reflect the economic reality of the parties' lifestyle and accumulated assets. Basing its determination on the testimony of Ms. Bolton's expert witness, the trial court found Mr. Bolton's annual income to be $78,782.90.

On May 3, 2013, Mr. Bolton filed a "Motion for New Trial or in the Alternative to Alter or Amend Judgment," wherein he generally suggested that the trial court's judgment was not supported by the evidence. The trial court denied Mr. Bolton's motion by an order entered on July 17, 2013. Mr. Bolton now appeals.

## II. Issues Presented

The issues raised by Mr. Bolton on appeal, as stated in his brief, are as follows:

1. Whether the court erred in determining the value of Appellant's businesses at $218,511.00.

2. Whether the trial court erred in the division of assets and liabilities of the parties.

3. Whether the trial court erred in imputing Appellant's income at $78,782.90.

4. Whether the trial court erred in awarding Appellee transitional alimony of $500.00 per month for a period of thirty-six months.

5. Whether the trial court erred in awarding Appellee alimony in solido of $5,000.00 towards her attorney's fees.

## III. Standard of Review

In reviewing any findings of fact by the trial court, our review is *de novo* "upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). We review a trial court's conclusions on questions of law *de novo*, but no presumption of correctness attaches to the trial court's legal conclusions. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

## IV. Discussion

3

We first turn to Mr. Bolton's assertions that the trial court erred in determining the value of his businesses and in dividing the marital assets and liabilities of the parties. Preliminarily, we note that although Mr. Bolton's first issue presented for review specifically challenges the trial court's findings as it concerns his businesses' value, we note that it is functionally a subset of the second issue presented for review, which challenges the trial court's general division of marital assets and liabilities. Under Rule 7 of the Rules of the Court of Appeals of Tennessee, "where a party takes issue with the classification and division of marital property, the party must include in its brief a chart displaying the property values proposed by both parties, the value assigned by the trial court, and the party to whom the trial court awarded the property." *Akard v. Akard*, No. E2013-00818-COA-R3-CV, 2014 WL 6640294, at *4 (Tenn. Ct. App. Nov. 25, 2014). "This Court repeatedly has held that the failure to comply with the requirements of Rule 7 waives issues relating to the division of property in a divorce case." *Horton v. Horton*, No. W2014-00880-COA-R3-CV, 2014 WL 6609291, at *3 (Tenn. Ct. App. Nov. 21, 2014) (citations omitted). "[A] table in compliance with Rule 7 is necessary to our consideration of property division issues in a divorce case," *id.*, and we note that "the Supreme Court has held that it will not find this Court in error for not considering a case on its merits where the [appellant] did not comply with the rules of this Court." *Bean v. Bean*, 40 S.W.3d 52, 54–55 (Tenn. Ct. App. 2000) (citation omitted). In this case, Mr. Bolton's brief does not contain a table complying with the requirements of Rule 7. As such, we find that his first two issues presented for review, both of which are directed at challenging the division of marital assets, are waived in this case.

We next turn to Mr. Bolton's assertion that the trial court erred in "imputing" his income at $78,782.90. In addressing this issue, we must note at the outset that we do not interpret the trial court's Order of Divorce as having actually imputed income to Mr. Bolton. Although that order concludes by stating that child support shall be calculated using an "imputed annual income of $78,782.90," the order makes no specific findings under the Child Support Guidelines that would allow it to actually impute income to Mr. Bolton.[2] Moreover, a close examination of the order reveals that the trial court's determination of Mr. Bolton's income was based on the testimony of Ms. Bolton's expert witness, Mr. David Warren ("Mr. Warren"), an accountant and former agent with the Internal Revenue Service ("IRS").

When Mr. Warren testified at the divorce hearing, he noted that in his previous role as an IRS agent he had experience using tax returns and other source documents,

---

[2] Under the Child Support Guidelines, a court may impute additional gross income to a parent if a parent is determined to be willfully and/or voluntarily underemployed or unemployed, if there is no reliable evidence of income, or if a parent owns substantial non-income producing assets. Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2).

including profit and loss statements, to determine whether a person was paying and reporting the amount of income that was required under the law. He further testified that in reconciling the various business and personal documents provided to him in this case by Mr. Bolton with Mr. Bolton's tax returns, it became obvious to him that Mr. Bolton's reported income was not sufficient to support the standard of living and accumulation of wealth that Mr. Bolton had attained. In arriving at a conservative estimate of Mr. Bolton's actual income, Mr. Warren relied on multiple sources of activity that supported a higher income than had been reported by Mr. Bolton. For instance, in addition to noting instances where Mr. Bolton had taken money out of his business for personal use but not reported it as income, Mr. Warren detailed Mr. Bolton's frequent participation in bartering exchange activities. Mr. Warren also testified that Mr. Bolton's business credit card had been used for personal expenses, but that Mr. Bolton did not report the benefit of such use as income on his tax returns. By taking account of all the activity in Mr. Bolton's records that Mr. Warren testified should have been reported as income, Mr. Warren estimated that Mr. Bolton's income was over $69,000.00 in 2011, and over $87,000.00 in 2010. In accepting this testimony to support its findings on Mr. Bolton's income, the trial court noted that it did not find Mr. Bolton to be a credible witness. Finding that Mr. Bolton's claimed and reported income did not accurately reflect his lifestyle and accumulated assets, the trial court specifically referenced the fact that Mr. Bolton failed to report as income the benefits he received through his business bartering account and business checking account.

We hold that the trial court's findings with regard to Mr. Bolton's income should not be disturbed. Mr. Warren's testimony provides a sufficient evidentiary foundation for the trial court's determination of income. Despite the fact that Mr. Bolton has historically reported lower earnings and asserts to earn a lower income presently, Mr. Warren's testimony indicates that Mr. Bolton's claimed income is severely underreported. Although Mr. Bolton argues in his brief that Mr. Warren did not provide sufficient proof or explanation for how he determined the 2010 and 2011 income figures, we note that Mr. Warren testified he had extrapolated Mr. Bolton's income from the personal and business records of Mr. Bolton which had been provided to him.[3] As a former IRS agent with experience in determining whether taxpayers were reporting the amount of income they were required to under the law, Mr. Warren was certainly qualified to testify concerning the amount of income Mr. Bolton should have reported in given years. The trial court did not err in crediting his testimony.

We next turn to Mr. Bolton's assertion that the trial court erred in awarding Ms. Bolton transitional alimony. Tennessee law has long recognized that trial courts should be accorded wide discretion in determining whether to award spousal support. *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011) (citation omitted). "When determining whether an award of alimony is appropriate, courts must consider the statutory factors in

---

[3] These records were admitted as an exhibit in the trial court.

Tenn. Code Ann. § 36-5-121(i)." *Gleaves v. Gleaves*, No. M2007-01820-COA-R3-CV, 2008 WL 4922533, at *6 (Tenn. Ct. App. Nov. 13, 2008).  These factors are:

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
>
> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
>
> (3) The duration of the marriage;
>
> (4) The age and mental condition of each party;
>
> (5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
>
> (6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
>
> (7) The separate assets of each party, both real and personal, tangible and intangible;
>
> (8) The provisions made with regard to the marital property, as defined in § 36-4-121;
>
> (9) The standard of living of the parties established during the marriage;
>
> (10)   The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

6

        (11)    The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

        (12)    Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i) (2014). Although a trial court should consider all the relevant factors under the circumstances, "the two most important factors to be considered are the need of the economically disadvantaged spouse and the obligor spouse's ability to pay." *Gleaves*, 2008 WL 4922533, at *7 (citations omitted). Whether alimony should be awarded "depends on the totality of the circumstances of each case." *Horton*, 2014 WL 6609291, at *3.

Transitional alimony is appropriate "when a court finds that rehabilitation is not required but that the economically disadvantaged spouse needs financial assistance in adjusting to the economic consequences of the divorce." *Gonsewski*, 350 S.W.3d at 109. It is "designed to aid a spouse who already possesses the capacity for self-sufficiency but needs financial assistance in adjusting to the economic consequences of establishing and maintaining a household without the benefit of the other spouse's income." *Id.* As a form of short-term, "bridge-the-gap" support, transitional alimony works to "'smooth the transition of a spouse from married to single life.'" *Mayfield v. Mayfield*, 395 S.W.3d 108, 115 (Tenn. 2012) (quoting *Engesser v. Engesser*, 42 So.3d 249, 251 (Fla. Dist. Ct. App. 2010)). On appeal, we review a trial court's award of alimony under the abuse of discretion standard. *Gleaves*, 2008 WL 4922533, at *7 (citation omitted). "If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative." *Id.* (citations omitted).

In this case, the trial court ordered that Mr. Bolton pay Ms. Bolton $500.00 per month as transitional alimony for a period of thirty-six consecutive months. Having reviewed the record transmitted to us, we find that the trial court did not err in awarding transitional alimony. Ms. Bolton's sworn statement of income and expenses indicates that she has over a $900.00 monthly shortfall in meeting her financial needs, and at the divorce hearing, she testified that her income has suffered since her separation from Mr. Bolton. Ms. Bolton also testified that she had enjoyed a good standard of living before her separation, which included going on vacations, attending concerts, and having plenty of money to go out to eat at restaurants, but she stated that she now has to live on credit cards and loans from family members "just to make it."

The evidence clearly shows that Ms. Bolton has been disadvantaged by her separation from Mr. Bolton. Moreover, our affirmance of the trial court's findings with

regards to Mr. Bolton's income reveals that he has the ability to make the monthly $500.00 transitional alimony payment. In light of these considerations, we hold that the trial court did not err in awarding Ms. Bolton short-term support as she adjusts from married to single life.

We next turn to Mr. Bolton's assertion that the trial court erred in awarding Ms. Bolton alimony *in solido* towards her attorney's fees. "It is well-settled that an award of attorney's fees in a divorce case constitutes alimony in solido." *Gonsewski*, 350 S.W.3d at 113 (citations omitted). "The decision whether to award attorney's fees is within the sound discretion of the trial court." *Id.* (citations omitted). An award of attorney's fees is only appropriate, however, "when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses . . . or the spouse would be required to deplete his or her resources in order to pay them[.]" *Id.* (citations omitted). When considering whether to award attorney's fees as alimony *in solido*, the trial court should consider the factors outlined in Tennessee Code Annotated § 36-5-121(i). *Id.*

Upon finding that some of Mr. Bolton's actions resulted in Ms. Bolton having to incur greater attorney's fees in pursuit of her rights, the trial court ordered that he pay her $5,000.00 in attorney's fees. Based on our review of the record, we discern no abuse of discretion by the trial court. At the divorce hearing, Ms. Bolton testified that she has had to borrow money to pay for her attorney's fees, and stated that she has relied on various credit cards, loans, and family support to help make her payments. In describing a specific loan from her aunt, Ms. Bolton testified she was given $5,000.00. We agree with the trial court that Ms. Bolton has a need for the award of attorney's fees and that Mr. Bolton has the ability to pay it. Accordingly, the trial court's award of alimony *in solido* is hereby affirmed.

We turn finally to Ms. Bolton's request in her brief that this Court award her attorney's fees related to the cost of appeal pursuant to Tennessee Code Annotated § 27-1-122. Under that statute, an appellate court may award damages for appeals that are frivolous or taken solely for delay. Tenn. Code Ann. § 27-1-122 (2000). "Determining whether to award these damages is a discretionary decision." *Young v. Barrow*, 130 S.W.3d 59, 66 67 (Tenn. Ct. App. 2003) (citation omitted). Exercising our discretion, we respectfully decline to award Ms. Bolton any attorney's fees related to the cost of this appeal.

### V. Conclusion

In light of the foregoing, we affirm the judgment of the trial court. Costs on appeal are assessed against the Appellant, William Jeff Bolton, and his surety, for which execution may issue if necessary.

_____
**ARNOLD B. GOLDIN, JUDGE**