IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 27, 2015 Session

## GELA ANNETTE FABRIZIO v. KEITH ANTHONY FABRIZIO, SR.

**Appeal from the Chancery Court for Monroe County**
**No. 17855    Jerri S. Bryant, Chancellor**

---

### No. E2014-02067-COA-R3-CV-FILED-OCTOBER 29, 2015

---

This appeal arises from an action for divorce wherein the trial court awarded alimony to the plaintiff wife, whom the court determined to be economically disadvantaged due to her inability to maintain employment. The husband has appealed the spousal support award, asserting that the trial court erred in its analysis of the applicable statutory factors. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Steven B. Ward, Madisonville, Tennessee, for the appellant, Keith Anthony Fabrizio, Sr.

Peter Alliman, Madisonville, Tennessee, for the appellee, Gela Annette Fabrizio.

### OPINION

#### I.  Factual and Procedural Background

The plaintiff, Gela Annette Fabrizio ("Wife"), filed a complaint for divorce against the defendant, Keith Anthony Fabrizio, Sr. ("Husband"), on November 20, 2012. The parties' marriage commenced December 14, 1991, and their separation occurred on October 6, 2012. There are no minor children of the marriage.

Both parties were employed during the marriage and contributed financially to the marital estate. Approximately three years before the trial in this matter, Wife began

experiencing significant health problems, including chronic obstructive pulmonary disease, chronic sino-pulmonary infections (sometimes requiring hospitalization), degenerative joint disease, chronic back pain, and urinary problems. According to Wife, she also suffered from anxiety and chronic major depression due to her health and marital problems. By the time of trial, Wife was no longer able to maintain employment and had no income. Meanwhile, Husband was employed, reporting a gross monthly income of $5,852.

The trial court conducted a hearing on the merits on March 25, 2014. Although the record contains no transcript of that hearing, the parties filed an agreed statement of the evidence demonstrating the following facts: Husband left the marital residence in September 2012, having told Wife that he no longer loved her. According to Wife, Husband thereafter began living with another woman. Wife stated that Husband refused to assist her during her illnesses and resultant surgeries and hospitalizations. His refusal to help intensified her mental distress and depression. Wife reported that while Husband's physical health and mental health were good, she was incapable of working due to her health concerns. Wife had applied for social security disability assistance but had not been granted such assistance by the time of trial.

Wife claimed that Husband spent money on expensive jewelry and other items following the parties' separation. According to Wife, when she confronted Husband about these purchases, he indicated he was going to "run up" a large amount of credit card debt in order to increase his expenses for trial. Husband denied making such a statement.

Husband did acknowledge, however, that he had left Wife after explaining that he did not love her anymore, and that his conduct had caused Wife mental and emotional hardship. Husband did not dispute Wife's multiple, significant health issues. He admitted not helping Wife during her illnesses. Husband also acknowledged that he began dating another woman in August 2013 and that they were cohabitating. Husband's brother also testified, further corroborating the significance of Wife's medical problems. He stated that Husband had abandoned Wife.

Exhibit 1 at trial consisted of a master asset list, which demonstrated that the parties' most substantial assets were two parcels of improved real property, with title to both being encumbered by mortgage debt. The parties also maintained unpaid balances on several credit cards. Moreover, Husband owed a substantial debt on his vehicle. Husband filed an income and expense statement, reflecting a monthly net income in the amount of $3,826 following the deduction of employment taxes, health insurance expense, and an IRA contribution. Husband reported monthly expenses of $3,994 in addition to the amount of spousal support he was paying pending trial. Wife's income

and expense statement demonstrated that she had no income apart from the alimony payments she received from Husband. Wife reported having monthly expenses totaling $2,161.

Following the hearing, the trial court entered a final judgment on July 7, 2014. As Husband was found to be guilty of inappropriate marital conduct, a divorce was awarded to Wife. The court fashioned an equitable division of the parties' marital property, which is not in dispute on appeal. The court assessed the majority of the parties' combined debt to Husband, ordering Wife to pay only the debts related to the marital residence, which was awarded to her. Concerning spousal support, the trial court stated:

> The Court finds that this was a long term marriage and that alimony is appropriate based upon the duration of the marriage, the Husband's ability to pay, and the Wife's need. The Court finds that the Wife is an economically disadvantaged spouse, is not receiving Social Security disability, and is unable to work due to her physical, psychological and emotional infirmities which is well documented by the record, including the Wife's medication and medical requirements. The Court further specifically finds that the Wife is not capable of working and that it is appropriate to award alimony in futuro and based upon the testimony and the entire record, the Court awards the Wife alimony in futuro in the amount of Two Thousand and No/100 ($2,000.00) per month payable in weekly payments beginning March 25, 2014. In the event the Wife's Social Security disability claim is approved, then the Court may reconsider the amount of [the] alimony award. In the event the Wife's Social Security disability claim is approved and she receives an arrearage, the parties have agreed and the Court approves that the Wife shall pay to the Husband one-half (1/2) the arrearage accumulated between February 1, 2011, when the claim for disability was filed, and the date of trial, March 25, 2014.

Both parties filed post-trial motions seeking alteration of the trial court's final judgment. Wife additionally filed a subsequent motion for contempt, asserting that Husband had failed to pay the full amount of alimony due. As the trial court found Husband to have a spousal support arrearage in the amount of $1,874, Wife was awarded attorney's fees of $1,000 related to the contempt motion. The court denied both parties' post-trial motions seeking amendment of the final judgment. Husband timely appealed.

## II.  Issue Presented

Husband's sole issue on appeal is whether the trial court erred in awarding Wife alimony *in futuro* in the amount of $2,000 per month based upon the relevant statutory factors.

## III.  Standard of Review

Regarding alimony, our Supreme Court has "repeatedly and recently observ[ed] that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award." *See Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011).  The Court has further explained:

> [A] trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors.  As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision."  *Kinard*, 986 S.W.2d at 234.  Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006).  Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion.  An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice.  This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'"  *Henderson*, 318 S.W.3d at 335 (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)).  Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision.

*Id*. at 105-06 (other internal citations omitted).

4

## IV. Alimony *in Futuro*

Husband contends that the trial court's award of spousal support was excessive based on the relevant statutory factors, with the most significant considerations, in his view, being Wife's need and Husband's ability to pay. Our statutory scheme regarding awards of alimony, provided in Tennessee Code Annotated § 36-5-121 (2014), states in pertinent part:

> (d)(1) The court may award rehabilitative alimony, alimony in futuro, also known as periodic alimony, transitional alimony, or alimony in solido, also known as lump sum alimony or a combination of these, as provided in this subsection (d).
>
> (2) It is the intent of the general assembly that a spouse, who is economically disadvantaged relative to the other spouse, be rehabilitated, whenever possible, by the granting of an order for payment of rehabilitative alimony. . . .
>
> (3) Where there is relative economic disadvantage and rehabilitation is not feasible, in consideration of all relevant factors, including those set out in subsection (i), the court may grant an order for payment of support and maintenance on a long-term basis or until death or remarriage of the recipient, except as otherwise provided in subdivision (f)(2)(B).
>
> * * *
>
> (f)(1) Alimony in futuro, also known as periodic alimony, is a payment of support and maintenance on a long term basis or until death or remarriage of the recipient. Such alimony may be awarded when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible . . . .
>
> * * *
>
> (i) In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:
>
>> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from

5

pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

In the case at bar, an examination of the above factors in light of the evidence presented at trial clearly militates in favor of an award of alimony *in futuro* to Wife. With regard to the first statutory factor, Husband's earning capacity greatly exceeded that of Wife, due to her inability to work and earn an income. Husband reported gross income of $5,852 per month while Wife's income was zero. Husband has greater financial resources than Wife due to his ability to maintain employment and his IRA. Regarding factor two, neither party presented evidence regarding education or training, but the record does demonstrate that Wife's health condition, rather than a lack of education, is the primary cause of her unemployment. Factor three concerns the marriage's duration. These parties were married for approximately twenty-three years, which constitutes a marriage of lengthy duration. With regard to factors four and five, although the parties were of similar age, Husband's mental health and physical health were far superior to Wife's, considering the chronic health problems she had experienced.

As to factors six and seven, the parties have no minor children. Wife's separate estate exceeded Husband's by approximately $7,500. Factor eight relates to the marital property distribution, which was nearly equal in this case. With regard to factor nine, the evidence preponderates in favor of a finding that the parties enjoyed a comfortable standard of living during the marriage. Concerning factors ten and twelve, both parties contributed to the marital estate as wage earners for most of the marriage, and there existed no significant tax consequences to consider. Finally, with regard to factor eleven, the trial court found Husband to be at fault for the dissolution of the marriage.

As our Supreme Court has frequently observed, two of the most important factors with regard to a determination of spousal support are "the disadvantaged spouse's need and the obligor spouse's ability to pay." *Mayfield v. Mayfield*, 395 S.W.3d 108, 116 (Tenn. 2012). Upon our careful review of the record, we agree with the trial court that Wife is an economically disadvantaged spouse. It was apparently undisputed that Wife was unable to maintain employment due to her health condition and therefore had no income. Wife was not receiving social security disability benefits or any other type of assistance. Consequently, she was completely dependent upon Husband's income to provide for her needs. Husband reported gross income of $5,852 per month, which placed him in a far better financial position than Wife.

Regarding Husband's ability to pay, Husband reported a net income of $3,826 per month following the deduction of his employment taxes, insurance expense of $569, and IRA contribution of $296. However, Husband's most recent paycheck stub, appearing in

the record from the motion and contempt hearing held in August 2014, evinces an insurance expense deduction of $42 per week, or $182 per month, and an IRA contribution of $45 per week, or $195 per month. Ergo, it appears that Husband has decreased his payroll deductions following the divorce, resulting in an increase of approximately $500 in Husband's monthly net income.

Our review of the expenses listed on Husband's statement demonstrates that Husband claimed to be paying $536 per month for a 2011 vehicle, as well as health club payments of $283 per month and credit card payments totaling over $1,400 per month. Husband also listed an "expected" mortgage payment of $425 per month, apparently denoting an amount that he was not paying at the time of trial. Husband thus reported total monthly expenses of $3,994 per month, or almost twice the amount of reasonable monthly expenses reported by Wife.

By reason of the trial court's determination that Wife established a need for the amount of alimony awarded and Husband demonstrated an ability to pay such amount, we conclude that the trial court correctly found Wife's listed expenses to be reasonable and necessary, while determining that Husband's listed expenses were not reasonable or necessary. Husband's decision to amass a substantial amount of consumer debt via credit card and vehicle payments should not deprive Wife of having her reasonable needs met. Furthermore, the credit card bills introduced by Husband at trial demonstrated that the payments he listed on his expense statement exceeded the minimum monthly requirement in most cases. In addition, Husband was making contributions to his IRA on a monthly basis and also paying health club dues and other discretionary expenses. Based on the totality of the evidence presented, we conclude that the trial court did not err in determining that Husband maintained the ability to pay spousal support.

Regarding Wife's need, Husband inexplicably argues that Wife's reported monthly expenses of $2,161 are excessive, despite his claiming almost twice that amount. Husband points out that he was ordered to pay all of the listed credit card debt and medical bills, such that Wife's monthly expense of $175 related to each of these respective expense categories should be deducted. The record contains no evidence, however, from which we can determine that Wife's allotted monthly payment of $175 for credit cards would be extinguished by the trial court's ordered assessment of certain credit card debt to Husband in the divorce. Although Wife does identify an expense of $175 per month for "Medical (payment on accts)," with Husband being ordered in the final judgment to pay all of Wife's outstanding medical bills, elimination of this expense would render Wife's total monthly expenses to be roughly $2,000, which was the amount awarded by the trial court in monthly spousal support. In addition, Wife established that she would, following the divorce, incur a monthly health insurance expense of $92, which was not included in her expense statement.

Based upon our thorough review of the evidence, we conclude that the trial court did not abuse its discretion in either the amount or nature of the alimony awarded to Wife. The trial court did not "apply[] an incorrect legal standard, reach[] an illogical result, resolve[] the case on a clearly erroneous assessment of the evidence, or rely[] on reasoning that cause[d] an injustice." *See Gonsewski*, 350 S.W.3d at 105. Wife demonstrated a reasonable need for the spousal support awarded while Husband demonstrated the ability to pay such an award. Therefore, we affirm the trial court's award of spousal support to Wife.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's judgment in all respects. Costs on appeal are assessed to the appellant, Keith Anthony Fabrizio, Sr. This case is remanded to the trial court, pursuant to applicable law, for collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE