IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 2, 2019 Session

## ANDREA RENEA HOPWOOD v. COREY DANIEL HOPWOOD

**Appeal from the Chancery Court for Williamson County**
**No. 41444     Joseph A. Woodruff, Chancellor**

_____

### No. M2018-00446-COA-R3-CV

_____

This is another appeal arising from the divorce of Corey Daniel Hopwood ("Father") and Andrea Renea Hopwood ("Mother"). In a previous opinion, we remanded for a new determination concerning the duration and amount of an award to Mother of rehabilitative alimony and the calculation of an award to Mother of attorney's fees attributable only to child custody and child support issues. The Chancery Court for Williamson County ("the Remand Court") addressed these two issues on remand. Father appeals to this Court, arguing in large part that he simply cannot afford to pay what the Remand Court ordered him to pay. Discerning no abuse of discretion, we affirm the Remand Court's rulings with respect to rehabilitative alimony and attorney's fees attributable to child support and child custody. However, we modify the Remand Court's judgment to reduce the amount of life insurance Father is required to carry to secure his alimony obligation in light of the reduction of his alimony obligation. We further modify the Remand Court's judgment to eliminate $750 in attorney's fees assessed against Father for filing an improperly-styled motion when he was acting pro se. The judgment of the Remand Court is affirmed as modified.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed as Modified; Case Remanded

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Karla C. Miller, Nashville, Tennessee, for the appellant, Corey Daniel Hopwood.

Russ Heldman, Franklin, Tennessee, for the appellee, Andrea Renea Hopwood.

# OPINION

## <u>Background</u>

Mother and Father married in 1999. Four children were born of the marriage. In 2012, Mother filed for divorce from Father. As this matter has been extensively litigated and appealed already, we will not detour into the issues leading up to the divorce.

Trial was held in February 2015, and final judgment was entered on April 21, 2015. Among other things, Father was ordered to pay $2,056 per month in child support; $2,500 per month in rehabilitative alimony for 15 years, to be secured in large measure by a life insurance policy of $350,000; and $42,901.50 in attorney's fees. Mother also was awarded $169,000 as alimony in solido. Father appealed to this Court. In our opinion filed June 23, 2016 deciding the prior appeal, we stated, as relevant:

> [W]e must also agree with Father that the evidence suggests that he simply does not have the ability to pay alimony in the amount awarded to Mother. *See* Tenn. Code Ann. § 36-5-121(i)(1). Here, even considering the uppermost figure used by the trial court to calculate Father's income, deducting his purported expenses and child support obligation, Father is left with only approximately $1,200.00 per month in surplus gross income before paying any alimony award. This Court has previously held that a trial court abuses its discretion in awarding alimony in an amount that a spouse "cannot realistically afford to make." *Woods v. Woods*, No. M2002-01736-COA-R3-CV, 2005 WL 1651787, at *9 (Tenn. Ct. App. July 12, 2005). Here, the trial court found that Father had the ability to pay Mother $2,500.00 per month considering Father's expenses. It is unclear from the trial court's order, thorough though it may be, whether the trial court also considered Father's child support obligation or the tax consequences to the parties in making such an award. Under these circumstances, we vacate the award of $2,500.00 per month in alimony to Mother and remand for reconsideration of what, if any, of Mother's need for alimony Father has the ability to pay given his income of $110,000.00 per year. Given that many of Father's expenses were estimated at the time of the divorce proceedings, the parties shall be permitted to introduce additional proof regarding expenses. The issue of Father's income for alimony purposes or the duration of the alimony obligation, however, may not be relitigated except as provided by Tennessee Code Annotated Section 36-5-121(e)(2).

***

Balancing both Father's lack of funds and the alimony in solido awarded to Mother against Father's admitted role in the duration of these proceedings, we discern no abuse of discretion in the trial court's decision to award Mother some reasonable attorney's fees pursuant to Tennessee Code Annotated Section 36-5-103(c). Not all of Mother's attorney's fees, though, are attributable to issues of child custody and support. Indeed, significant issues in this case concerned fault for the demise of the marriage, alimony, and property division. Because we are remanding this case for reconsideration of Father's alimony award, we vacate the trial court's award of all of Mother's requested attorney's fees. Instead, we remand to the trial court for a calculation of Mother's attorney's fees that are attributable only to issues involving child custody and child support.

*Hopwood v. Hopwood*, No. M2015-01010-COA-R3-CV, 2016 WL 3537467, at *15-16 (Tenn. Ct. App. June 23, 2016), *no appl. perm. appeal filed*.

Thus the Remand Court's instruction was to render new determinations as to rehabilitative alimony and attorney's fees to Mother. As to the alimony, both duration and amount were to be readdressed, with the evidence relating back to the original hearing. By agreement of the parties, no new hearing was conducted on remand. Instead, the parties submitted briefs and affidavits. In January 2018, the Remand Court entered its detailed memorandum and order. The Remand Court stated, in pertinent part:

Father has an ability to pay an award of rehabilitative alimony based upon his imputed income of $110,000.00 per year, Affidavit for Remand from TN Appellate Court, Statement of Income and Expenses, as to his regular income, and Statement of Income and Expenses, as to his imputed income, filed on September 11, 2017. Further, Mother has a need for rehabilitative alimony based upon her regular income at the time of the trial of $15,963.87 per year, and her Notice of Filing, which included Wife's Statement of Issues, Income, Property, and Expenses, marked as Exhibit 12 at trial of February 2, 201[5], and an Affidavit of Current Expenses.

***

[T]his Court finds the duration of the award of rehabilitative award for Mother should extend to ninety-six (96) months, or eight (8) years, from the time of the entry of the Final Judgment of April 21, 2015 because this duration allows sufficient time for Mother to complete her education goals.

***

-3-

Also, Father argues his Statement of Income and Expenses, as to his regular income, shows Father's gross monthly income of $4,548.07 and total net income less expenses of -$532.00 per month, thus, he should not be obligated to pay any alimony to Mother. In support, Father relies upon the excerpt from the Tennessee Court of Appeals Opinion of June 23, 2016 stating, "a trial court abuses its discretion in awarding alimony in an amount that a spouse 'cannot realistically afford to make.'" *Id*. at *15 (quoting *Woods v. Woods*, No. M2002-01736-COA-R3-CV, 2005 WL 1651787, at *9 (Tenn. Ct. App. July 12, 2005)). However, to follow Father's approach would be to ignore the concurrent findings of the trial court, and the Tennessee Court of Appeals, that Father is willfully underemployed and an imputation of income between $100,000.00 and $110,000.00 was proper. The Tennessee Court of Appeals expressly held, "[t]he issue of Father's income for alimony purposes or the duration of the alimony obligation, however, may not be relitigated except as provided by Tennessee Code Annotated Section 36-5-121(e)(2)." *Hopwood*, 2016 WL 3537467, at *15. As such, this Court declines to follow Father's misguided approach. Therefore, the Court shall determine the amount of rehabilitative alimony that Father "realistically" can pay if he was not willfully underemployed, with an income of $110,000.00.

Here, the Court finds Father's imputed income for establishing rehabilitative alimony is $110,000.00 per year. Thus, Father's monthly gross income is $9,166.67. Upon examining Father's Statement of Income and Expenses, as to his regular income, and Statement of Income and Expenses, as to his imputed income, filed on September 11, 2017, the Court finds Father has monthly expenses in the amount of $3,937.90. Further, Father is required to make child support payments to Mother in the amount of $2,056.00 each month. Thus, Father should have a net disposable income of $3,172.77 each month. The Court finds Father can afford, and therefore shall be required to pay Mother an award of rehabilitative alimony of $1,600.00 per month. This amount provides Mother with the funds to enroll in the community college as proposed at the trial, while also providing Father a surplus of $1,572.00 to account for the alleged additional credit card payments not yet finalized with the creditors, which he estimates to amount to $400.00 per month.

***

Mother's Notice of Filing of September 13, 2017, included an Affidavit of Russ Heldman on Attorneys Fees. Mother's counsel stated he had reviewed every entry of his attorney's fees introduced as evidence as

-4-

Exhibits No. 18 and No. 43 at the trial and the Third Supplemental Affidavit filed on April 8, 2015, upon which the original award of attorneys fees was based. Further, Mother's counsel determined at least sixty percent (60%) of fees charged to Mother are attributable to the issues of child custody and child support. This amounts to $25,740.90. Father objects as to which attorneys fees are attributable to child custody and child support because there is no mention of said issues in the description of the itemized attorney's fees bill.

Upon review of the relevant factors set out in the Tennessee Supreme Court Rule 8, Rule 1.5 of the Rules of Professional Conduct, the Court finds the attorney's fees requested are reasonable. In determining a reasonable fee award to Mother in this case, the Court places greatest weight on the amount in controversy and the results achieved. The Court finds Mother's counsel billed $42,901.50 for his total legal services and obtained a very favorable result for Mother in the divorce, in which she received status as the primary residential parent, *in solido* alimony, rehabilitative alimony, and child support. Additionally, the time, labor, and skill required to perform these legal services reflect that this is a reasonable attorney's fee. Mr. Heldman is a sole practitioner, therefore the acceptance of this particular employment precluded other employment. Father's litigation conduct resulted in an extensive amount of time being required to obtain basic discovery requests from Father and contributed to the duration of this litigation.

Mother's counsel charged an hourly rate of $275.00 and charged his legal assistant's hourly rate of $90.00. The Court finds this fee to be well within the range of fees customarily charged in this judicial district for similar legal services. The Court also finds the time limitations imposed by the circumstances, and the nature and length of the professional relationship with the client are in favor of the award of attorney's fees. Mother's counsel also has excellent experience, reputation, and ability as an attorney to perform these service[s]. There is no evidence in the record as to the prior advertisements of Mother's counsel's fees or whether the fee agreement is in writing. In sum, the attorney's fees requested are reasonable.

Furthermore, upon review of the record and the Third Supplemental Affidavit of Russ Heldman filed on April 8, 2015, the Court finds child custody and child support were significant matters in this contentious case. Additionally, the Court notes there were other very important issues at hand that the trial court resolved, including the fault for the demise of the marriage, alimony, and property division.

Ultimately, the Court finds Mother's recoverable attorney's fees, which were attributable to issues involving child custody and child support pursuant to Tennessee Code Annotated Section 36-5-103(c), are $21,450.00. This accounts for approximately fifty percent (50%) of Mother's attorney's fees in this cause of action.

(Footnotes omitted). Father timely appealed.

In August 2018, then pro se Father filed his "motion for correction of record on appeal" in which he requested the inclusion of certain items in the record for appeal. The Remand Court denied Father's motion as brought improperly and assessed attorney's fees against him. In an August 2018 order, the Remand Court stated:

This post-remand divorce case is before the Court upon Husband's Motion [filed August 13, 2018] for Correction of Record on Appeal. The present motion is Father's second attempt to change the record on appeal in order to include matters that are not properly part of the appellate record. At a motion hearing held on July 5, 2018, this Court decided Mother's objections to Father's first improper efforts to include irrelevant matters in the record on appeal. The current motion is nothing more than Father's unjustified and procedurally improper effort to change the Court's earlier ruling. The motion is without merit and is therefore DENIED.

Father's vexatious litigation tactics, and improper motion practice has caused Mother unnecessarily to incur attorney's fees in responding to Father's motion, which had he properly denominated his motion as one brought pursuant to Rule 59 of the Tennessee Rules of Civil Procedure could have been disposed of by the Court without Mother having to file and serve a written response in opposition. See Local Rule 6.01. Moreover, the gravamen of this post-remand proceeding involves determination of matters related to alimony, and Mother's reasonable attorney's fees. In her response in opposition to Father's meritless motion, Mother's counsel of record represents that Mother has incurred $750 of attorney's fees in having to respond. The Court finds this is a reasonable amount in the aggregate based upon a reasonable hourly rate of $300.

Accordingly, the Court hereby awards Mother a judgment against Father in the amount of $750 representing an award of attorney's fees in the trial court, for which execution may issue upon the entry of a final order.

This appeal is properly before us.

**Discussion**

Although not stated exactly as such, Father raises the following issues on appeal: 1) whether the Remand Court erred in its determination of Father's net disposable income; 2) whether Father's requirement to carry a $350,000 life insurance policy to secure his alimony obligation should be reduced or eliminated in light of the reduction in the underlying alimony obligation; 3) whether the Remand Court erred in its award to Mother of attorney's fees attributable only to child custody and child support; and 4) whether the Remand Court erred in denying Father's "motion for correction of record on appeal" and in its award to Mother of $750 in attorney's fees. Mother raises a separate issue of whether she should be awarded her attorney's fees incurred on appeal.

The applicable standard of review is that of abuse of discretion. "An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). "[W]hen reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision." *Id*. at 105-06. Likewise, as to attorney's fees for child support and child custody, "under section 36-5-103(c), the Court of Appeals' standard of review is abuse of discretion for both the issue of whether the party is entitled to an award and the issue of the amount of the fees awarded." *Eberbach v. Eberbach*, 535 S.W.3d 467, 479 n. 7 (Tenn. 2017).

We first address whether the Remand Court erred in its determination of Father's net disposable income. Father does not contest the eight-year duration of the alimony award. Father does take issue with the amount of the alimony awarded. According to Father, he simply cannot afford what the Remand Court ordered him to pay Mother. Father asserts that the Remand Court failed to consider tax consequences when determining the amount of alimony despite this Court, in our previous opinion, specifically citing tax consequences as an important factor in the case. In his brief, Father argues thusly:

> The Trial Court's calculation, most respectfully, does not take into consideration that Mr. Hopwood will have to pay taxes on his income, although the Court recognizes that $9,166.67 is Mr. Hopwood's "monthly *gross* income". In Mr. Hopwood's affidavit, he provided amounts that would be deducted from his pay for Federal Taxes, FICA and Medicare, on an income of $8,333 per month (approximately $100,000 per year, the income imputed to him for child support purposes). The total of these

deductions on that income is $2,332.20 per month (approximately 28%). Deducting that from Mr. Hopwood's "*net* disposable income" of $3,172.77 per month leaves him with only $840.57 each month with which to pay alimony (and nothing to cover any of the credit card payments noted by the Trial Court which would be approximately $400 per month). It follows that taxes would be higher for an income of $110,000 per year. Assuming Mr. Hopwood's tax obligation is roughly 28% on $110,000, his monthly deductions would actually total $2,566.67. This leaves him with only $606.10 per month with which to pay alimony or any other expenses.

(Record citations omitted).

To this, Mother argues that Father failed to put on any time-appropriate evidence of his expenses. Both sworn statements filed by Father in the Remand Court reflect an itemization of expenses as of September 11, 2017, not 2015 when the matter was tried. In our previous opinion, we stated explicitly that Father's income was not to be relitigated in this particular action. Just as Father's income was not to be relitigated on remand meaning his income was as of the trial date in 2015, so were his expenses to be as of the 2015 trial date. Apart from the contemporaneousness of Father's evidence, Mother notes also that $1,600 per month is roughly 18% of Father's imputed annual income of $110,000. Mother argues that that is not an onerous burden at all.

Mother's point that Father failed to submit evidence of expenses as of 2015 is well-taken. Mother and Father both had an opportunity to present additional proof on remand regarding the actual expenses as of the trial date rather than the estimated expenses as had been presented at trial in 2015. Had Father wished to show that he could not afford to pay alimony as of the trial date in 2015, he should have put on proof to that effect. Instead, Father essentially is attempting to modify alimony while still on appeal from the original order. This is not an appropriate maneuver. If Father wishes to modify his alimony obligation going forward, he may file a petition to do so.

With respect to taxes, the chief basis for Father's opposition to the alimony, we have only Father's word to go on that he pays a 28% tax rate on an imputed $110,000 annual income. Father did not submit any tax returns on remand to support his contention. Father's affidavit provided only the amount of his monthly deductions for "federal taxes, FICA and Medicare . . . ." Father provided no proof that the amount of taxes he actually paid was equal to the monthly deductions. The Remand Court had to rule on the evidence presented to it. Father's imputed monthly income is $9,166.67. Subtracting $2,056 (child support), $1,600 (new rehabilitative alimony obligation), and even the $2,566.67 (based on Father's unsupported claim of 28% tax rate), Father is left with $2,944 per month. We agree with Mother that this is not an unreasonable figure,

Father's purported expenses notwithstanding. Decisions regarding spousal support are discretionary in nature. We find no abuse of discretion in the Remand Court's award to Mother of $1,600 per month in rehabilitative alimony for a period of eight years.

We next address whether Father's requirement to carry a $350,000 life insurance policy to secure his alimony obligation should be reduced or eliminated in light of the reduction in the underlying alimony obligation. Under the original rehabilitative alimony award, Father's total alimony obligation was $450,000 at a rate of $2,500 per month for 15 years, which he was required to secure via life insurance policy in the amount of $350,000. Father's new total rehabilitative alimony obligation is $153,600 at a rate of $1,600 per month for eight years. Father requests a corresponding reduction in how much life insurance he is required to carry.

Mother argues in response that the life insurance requirement really was meant to secure Father's entire slate of obligations to Mother, not just the rehabilitative alimony, and the $350,000 life insurance policy requirement should be left undisturbed. Mother argues further that this Court, by affirming all aspects of the original judgment not vacated or reversed in our opinion, has precluded further litigation of the life insurance in this appeal. It is Mother's position that affirmance of the $350,000 life insurance policy requirement is the law of the case.

To decide whether Mother is correct, we look to our previous opinion. We presented one of Father's issues as follows: "Whether the trial court erred in the amount and duration of alimony awarded to Mother and erred in requiring Father to insure the alimony obligation in the amount of $350,000.00 (via life insurance policy)." *Hopwood*, 2016 WL 3537467, at *4. We vacated the rehabilitative alimony award but said nothing specifically about the insurance securing it.

To further clarify whether the $350,000 was general security for Father's overall obligations or particular security for the rehabilitative alimony, we quote from the original 2015 judgment:

> Based upon the $2,500 per month and the length of time, the alimony payment should be secured in the event Husband dies or something happens to him before the expiration of the obligation. The additional amount is set at $350,000. Husband shall maintain a policy or group of policies for that additional amount to specifically secure his financial obligation or alimony. Therefore, Husband shall maintain and keep in full force and effect life insurance to cover in the total amount of $350,000, and name Wife as beneficiary of said $350,000.

The life insurance policy is tied inextricably to Father's rehabilitative alimony obligation. As a result of the Remand Court's judgment, he is securing a $153,600 rehabilitative alimony obligation with $350,000 in life insurance. This discrepancy must be corrected.

The $350,000 in life insurance was so related to the original alimony award as to be part of the rehabilitative alimony award, an award which this Court instructed the Remand Court to determine anew. Mother argues strongly that the full, original $350,000 life insurance policy still is needed to secure Father's overall obligations. That, however, is a post hoc rationale and distorts the purpose of the life insurance as stated in the original judgment. We, therefore, modify the judgment of the Remand Court to reduce Father's life insurance burden from $350,000 to $153,600.

We next address whether the Remand Court erred in its award to Mother of attorney's fees attributable only to child custody and child support issues. Father argues that the Remand Court did not sufficiently explain its method for determining exactly which fees went toward child support and child custody. Mother argues that the Remand Court properly exercised its discretion in arriving at a figure. Mother's counsel submitted the following affidavit below:

> I represented Andrea Hopwood in the above style case. I have reviewed every entry in the Affidavits for Attorney's fees which were introduced as evidence as Exhibits No. 18 and No. 43 in the Trial of this Cause and the supplemental Affidavit filed April 8, 2015, upon which the original award of attorney's fees was based. Issues pertaining to child custody and child support were of the most heavily contested issues in this case. In my opinion, at least sixty percent of fees charged to Ms. Hopwood are attributable to the issues of child custody and child support. From review of the entries shown by Affidavit previously accepted by the Trial Court, *at least* $18,734.40 in fees shown from the Affidavit were attributable [to] the issues involving child custody and child support. For purposes of the Remand Hearing; on behalf of Ms. Hopwood, I respectfully request the Trial Court to enter judgment in the amount of $18,734.40 for Ms. Hopwood against Mr. Hopwood as an award of Attorney's fees, for which execution may issue if necessary.

Father argues that the Remand Court needed to rely on specific time entries to properly calculate attorney's fees incurred only on child support and child custody issues. Because it did not, argues Father, the Remand Court erred and Father should not have to pay the attorney's fees. Father cites to no law backing his position.

-10-

The Remand Court, as quoted above, discussed in detail its reasoning for arriving at the figure of $21,450. This new figure represents a 50% reduction in Father's original attorney's fee obligation to Mother. Mother's counsel submitted an affidavit to the Remand Court as agreed by the parties, stating his determination that at least 60% of his fees were attributable to child support and custody issues. The Remand Court adhered to our instruction and set a new figure on, again, the basis of the evidence presented to it. We find no abuse of discretion in the Remand Court's calculation of an award to Mother of $21,450 in attorney's fees attributable only to child custody and child support issues.

Father's fourth and final issue is whether the Remand Court erred in denying Father's "motion for correction of record on appeal" and in its award to Mother of $750 in attorney's fees. Father argues that he simply was attempting to designate the record as a pro se litigant and made a mistake in styling his motion. Mother, on the other hand, contends that Father was engaging in more vexatious litigation tactics and he has no credibility.

A review of the motion in question is useful. In his "motion for correction of record on appeal," Father stated in part:

> The matter on appeal originates from a Divorce trial held in January 2015. The record provided the Appellate Court contains nothing from the original trial. It is evident from this Court's ruling on remand that this Court relied on that record in reaching its decision. Further, Father's affidavit filed on remand has been excluded and should rightly be included. It would be an injustice to not include the record for review by the Appellate Court. Also, there was no filing made by Mother pursuant to T.R.A.P. 24(a) requesting less than the full record on appeal. Mother challenged Father's statement of Evidence which this Court seems to have resolved. This should be followed by the full record on appeal as the rule states what the record SHALL consist of.

> Thusly, in absence of any non-stricken filing requesting less than the full record on appeal, Father respectfully requests this Court supplement the Record on Appeal by providing the full record pursuant to T.R.A.P. 24(a).

When Father filed his motion, he was acting pro se. "[W]e measure the papers prepared by pro se litigants using standards that are less stringent than those applied to papers prepared by lawyers." *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003). Father later retained counsel, and the record on appeal eventually was supplemented to include items like the original final judgment of divorce. Father had a legitimate purpose when seeking to designate the record on appeal. Matters from the

original trial were relevant indeed to our disposition of this appeal. We do not agree that this motion filed by Father was purely for the purpose of delay. While styled improperly, there was arguable merit to Father's motion. We modify the Remand Court's judgment to eliminate $750 in attorney's fees assessed against Father for filing his improperly-styled motion.

The last issue we address is Mother's separate issue of whether she should be awarded her attorney's fees incurred on appeal. Considering that Father partially was successful on appeal and in light of all relevant considerations, in our discretion we decline to award Mother her attorney's fees incurred on appeal.

## Conclusion

The judgment of the Remand Court is affirmed as modified, and this cause is remanded to the Remand Court for entry of a final judgment consistent with our Opinion and for collection of the costs below. The costs on appeal are assessed against the Appellant, Corey Daniel Hopwood, and his surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE