

**FILED**
**Oct 16, 2019**
**01:45 PM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD
### (HEARD OCTOBER 1, 2019, AT NASHVILLE)

| | | |
|---|---|---|
| Darrell Ailshie | ) | Docket No.  2017-05-0869 |
| | ) | |
| v. | ) | State File No. 93732-2014 |
| | ) | |
| TN Farm Bureau Federation, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Dale A. Tipps, Judge | ) | |

---

## Affirmed and Remanded

---

In this interlocutory appeal, the employee alleges he sustained head and neck injuries in the course and scope of his work handling livestock.  He received authorized medical treatment and was ultimately referred to a neurologist who provided an opinion in a deposition as to the degree of permanent impairment the employee sustained as a result of the work accident.  The employer filed a motion to exclude portions of the doctor's testimony concerning the employee's permanent impairment rating, asserting the testimony did not comply with the requirements of Rules 702 and 703 of the Tennessee Rules of Evidence.  The trial court concluded the doctor's opinions were admissible and denied the employer's motion.  The employer has appealed.  Discerning no error, we affirm the trial court's decision and remand the case.

Judge David F. Hensley delivered the opinion of the Appeals Board in which Presiding Marshall L. Davidson, III, and Judge Timothy W. Conner joined.

Nicolas J. Peterson, Knoxville, Tennessee, for the employer-appellant, TN Farm Bureau Federation

Richard T. Matthews, Columbia, Tennessee, for the employee-appellee, Darrell Ailshie

## Factual and Procedural Background

While sorting cattle in the course and scope of his work for Tennessee Farm Bureau Federation ("Employer") on December 1, 2014, Darrell Ailshie ("Employee")

1

was struck on his head by a gate when a steer charged the gate, resulting in his momentary loss of consciousness. Employee received immediate authorized medical treatment and was subsequently treated by Dr. Kelly Snyder, whom Employee selected from a panel of physicians. Employee was ultimately referred to Dr. Louise Ledbetter, a board-certified neurologist, for evaluation due to Employee's continuing complaints of memory loss and chronic daily headaches.[1]

Employee eventually filed two separate petitions seeking workers' compensation benefits, the first in August 2017 and the second in January 2019. The parties engaged in discovery and, following Dr. Ledbetter's deposition, Employer filed a motion in limine requesting the trial court to exclude from evidence all of Dr. Ledbetter's testimony and records relating to her assessment of Employee's medical impairment rating, citing Rules 702 and 703 of the Tennessee Rules of Evidence, as well as case law.

The trial court denied Employer's motion, noting that Dr. Ledbetter treated Employee for his work injuries over a period of several months and testified she utilized the Sixth Edition of the American Medical Association's Guides to the Evaluation of Permanent Impairment ("AMA Guides") in calculating Employee's impairment rating. The trial court also considered Dr. Ledbetter's testimony that she had been using the AMA Guides for twenty-five years and was confident she knew how to use the AMA Guides. The court concluded that Dr. Ledbetter's credentials and experience "qualify her to offer an expert opinion on both medical causation and the extent of any permanent impairment." Addressing Employer's assertion that Tennessee Rules of Evidence 702 and 703 required that Dr. Ledbetter's testimony be excluded from evidence, the court stated that Dr. Ledbetter "meets the qualification requirements of Rule 702," adding that she "is an 'expert by knowledge, skill, experience, training, or education,' [and] the Court believes her testimony could 'substantially assist' it to determine the facts of this case." Further, the court stated in its order that Dr. Ledbetter's testimony, "when read in full, does not indicate a lack of familiarity with the [AMA] Guides that would constitute untrustworthiness under Rule 703." Employer has appealed.

**Standard of Review**

A trial court's determination regarding admissibility of expert testimony will not be overturned absent an abuse of discretion. *Skaggs v. Phillips*, No. E2012-02479-WC-R3-WC, 2014 Tenn. LEXIS 12, at *6 (Tenn. Workers' Comp. Panel Jan. 15, 2014). "An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice."

---

[1] Employer asserts that Employee sought treatment from Dr. Ledbetter on his own. Dr. Snyder's April 6, 2016 report included a referral to Dr. Ledbetter to evaluate and treat "as [Employee] requested." Whether Dr. Ledbetter was an authorized physician is not relevant to the issue on appeal.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). The abuse of discretion standard "does not permit an appellate court to substitute its judgment for that of the trial court." *Id.* Pursuant to this standard, "the appellate court should presume the [trial court's] decision is correct and should review the evidence in the light most favorable to the decision." *Id.* at 105-06. We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2018).

**Analysis**

Employer raises a single issue on appeal: whether the trial court abused its discretion by denying its motion in limine. Specifically, Employer questions the admissibility of Dr. Ledbetter's testimony concerning her assessments of Employee's permanent impairments for his alleged brain and cervical injuries. Stating that Dr. Ledbetter "has no training regarding the application of the [AMA] Guides" and was "unable [to] explain how she reached the opinion she espoused as to permanent medical impairment," Employer contends her opinions are not sufficiently reliable and trustworthy to satisfy the legal prerequisites for admissibility under Rules 702 and 703 of the Tennessee Rules of Evidence.

Rule 702 provides that "[i]f scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." Tenn. R. Evid. 702. Among other requirements, Rule 703 requires a trial court "to disallow testimony in the form of opinion or inference if the underlying facts or data indicate lack of trustworthiness." Tenn. R. Evid. 703. In this case, Employer does not contend that Dr. Ledbetter is unqualified to give opinion testimony, nor does Employer contend Dr. Ledbetter failed to use the Sixth Edition of the AMA Guides as required by Tennessee Code Annotated section 50-6-204(k)(2)(C). Rather, Employer questions the admissibility of her testimony concerning Employee's permanent impairment ratings, contending Dr. Ledbetter's opinion testimony lacks trustworthiness and is less reliable because she has no formal training in the use of the AMA Guides, was "unable to affirmatively testify that she had read all of the [AMA Guides]," and "could not recall" during her deposition how she arrived at the ratings she assigned or which applicable grade modifiers in the AMA Guides she applied.

We note, initially, that workers' compensation judges must "conduct hearings in accordance with the Tennessee Rules of Civil Procedure, the Tennessee Rules of Evidence, and the rules adopted by the bureau." Tenn. Code Ann. § 50-6-238(a)(3) (2018); *see also* Tenn. Code Ann. § 50-6-239(c)(1) ("The Tennessee Rules of Evidence and the Tennessee Rules of Civil Procedure shall govern proceedings at all hearings

3

before a workers' compensation judge unless an alternate procedural or evidentiary rule has been adopted by the administrator."). Moreover, Tennessee Code Annotated section 50-6-204(k)(2)(A) requires that, in assigning impairment ratings, the treating physician "shall utilize the applicable edition of the AMA guides." Subsection 204(k)(2)(C) provides that "[n]o impairment rating . . . shall . . . be admissible into evidence at the trial of a workers' compensation claim unless the impairment rating is based on the applicable edition of the AMA guides or, in cases not covered by the AMA guides, an impairment rating by any appropriate method used and accepted by the medical community." The Workers' Compensation Act defines "AMA guides" to mean "the 6th edition . . ., until a new edition is designated by the general assembly." Tenn. Code Ann. § 50-6-102(2) (2018). The edition of the AMA Guides applicable to a claim is the edition in effect on the date an employee is injured. *Id.* In this case, no one contests that the Sixth Edition is the applicable edition of the AMA Guides.

Dr. Ledbetter testified that she is a board-certified neurologist and has a general neurology practice that focuses on traumatic brain injuries. She stated that during Employee's first visit she considered dementia in her differential diagnosis, but that based on Employee's medical history and examination "[her] differential diagnosis and, ultimately, diagnosis, was traumatic brain injury and head and neck injury."[2] Following her examination of Employee, Dr. Ledbetter recommended he have an MRI, and she referred him for a neuropsychological evaluation. Employee was subsequently evaluated by Dr. Dale Alden, a neuropsychologist. Dr. Ledbetter testified that Dr. Alden's evaluation indicated "there were abnormalities . . . that were consistent with [her] diagnosis of a traumatic brain injury." She testified that when she made her initial diagnosis, the diagnosis was not "permanent" because it was not confirmed by objective data, but that with Dr. Alden's testing she had objective data "that confirmed the location, the type of injury, and the permanence of [Employee's] condition."

Dr. Ledbetter was asked whether, based on the Sixth Edition of the AMA Guides, Employee sustained a permanent impairment that arose primarily out of Employee's work injury. She testified that Employee suffered a permanent impairment of 15% related to his traumatic brain injury and 5% related to his cervical injury. Asked about the "basis" of Employee's cervical injury and his cervical impairment, Dr. Ledbetter described Employee's symptoms following the work injury, stating that he did not have the symptoms before the accident and that he improved with the treatment she provided, but the relief was only temporary. Dr. Ledbetter testified that Employee had a pre-existing cervical condition that was aggravated by the work incident; that the aggravation arose primarily out of the work incident; and that Employee's pre-existing cervical condition was advanced by the work-related aggravation.

---

[2] Making a differential diagnosis involves the process of "weighing the probability of one disease versus that of other diseases possibly accounting for a patient's illness." William C. Shiel, Jr., Medical Definition of Differential Diagnosis, MedicineNet (last updated December 4, 2018) https://www.medicinenet.com/script/main/art.asp?articlekey=2991.

On cross-examination, Dr. Ledbetter testified that after the MRI was obtained, she ruled out any causes of Employee's neck pain other than the work incident. Dr. Ledbetter also testified that Employee's pain complaints improved with trigger point injections but his pain returned, making it "evident that it was, in fact, permanent." She estimated that she concluded Employee's cervical pain issues were permanent "a year after his initial visit."

Asked about her training on the use of the AMA Guides, Dr. Ledbetter testified she had been "doing this for [twenty-five] years, long before [she] was aware of any certifications," and that she was "confident that [she] know[s] how to use the Sixth Edition." She acknowledged that her knowledge of using the AMA Guides was self-taught. Asked whether she had read the entire Sixth Edition, Dr. Ledbetter stated "[p]ossibly," adding that she "refer[s] to it on a regular basis and [she has] certainly thumbed through all of it, so quite possibly."

Dr. Ledbetter was cross-examined in detail concerning Employee's cervical impairment and how she arrived at a 5% rating. She explained that she "reached the [5%] because [Employee] has documented motion segment lesions by MRI at a single level . . . or he has multiple levels, plus he has the documented history of strain – strain/sprain-type injury with continued complaints of axial and verifiable complaints." She described grade modifiers as modifying "between various grades of a permanent impairment in a particular table," and when asked "what are those grade modifiers" she responded by stating that "if you'll show me a page, I'll review it with you." Rather than being shown a page of the AMA Guides, she was asked what grade modifiers she used in arriving at the cervical rating and stated, "I don't recall. I don't remember." Pressed as to whether she understood how she reached the 5% rating, she said, "[w]ell, could I go through it with you[?] I could just as easily have called it a cervical radiculopathy and used a different table, but I called it a strain or a sprain." She again stated she was not sure how she applied the grade modifiers to arrive at the rating: "[a]s I sit here I just can't remember on that particular date what I – why I chose five as opposed to eight [percent]," and she acknowledged she could not recall "off the top of [her] head" what the categories of grade modifiers were in the table she used to arrive at Employee's cervical impairment rating.

Turning to the traumatic brain injury diagnosis and the 15% rating she assessed as a result of the brain injury, Dr. Ledbetter was asked whether she had read the entire chapter in the AMA Guides that addressed the central and peripheral nervous system. She stated she "would assume" that she had, adding "I would say that I have, but it might not be to a reasonable degree of medical certainty." She was asked about the classes of abnormalities as identified in that particular chapter of the AMA Guides. Referring to the table for rating impairment of consciousness and awareness, she stated Employee was in Class 2 "on account of having moderate abnormalities." Dr. Ledbetter explained that, based on Employee's history, her examination, and the objective findings in Dr. Alden's

report, Employee's mental status "interferes with his ability to assume some normal roles or perform some [activities of daily living]." She described the activities of daily living that Employee had difficulty with. She was also cross-examined concerning when she made her assessment of Employee's impairment, and she acknowledged that in making her assessment she relied on Dr. Alden's report that was made two years before her assessment. Asked whether Employee's condition could have changed in those two years, she stated it was not likely based on the fact that Dr. Alden's evaluation was performed nearly two years after the injury, adding that she had been seeing Employee on a regular basis since the date of Dr. Alden's evaluation and she "did not find much change, other than improvement in headaches and improvement in neck pain and improvement in his ability to cope with his injuries over that period of time."

Dr. Ledbetter was cross-examined in detail regarding impairment evaluations under the AMA Guides. Concerning Employee's alleged traumatic brain injury, she was asked why she placed Employee in the moderate or Class 2 category in the table she used, which she noted to have a range of impairment from 11% to 20%, and how she determined Employee's impairment within that 11% to 20% range. Dr. Ledbetter responded, "I don't recall." Asked whether she recalled what the grade modifiers were for the table she was using, she again said, "I don't recall."

Although Dr. Ledbetter admitted her knowledge of using the AMA Guides was "self-taught," her testimony established that she consulted the AMA Guides in formulating her opinions. In our view, in determining the credibility of her testimony and the weight it should be given, it is appropriate for the trial court to consider Dr. Ledbetter's lack of formal training in the application of the AMA Guides and her inability to recall or cite to the grade modifiers she used in her assessments. However, Tennessee Code Annotated section 50-6-204(k)(2)(C) does not require that a physician receive formal training or be certified in the use of the AMA Guides before the physician's testimony is admissible, and we decline to read such a requirement into the statute. The statute merely prohibits expert opinion testimony concerning an impairment rating if the rating is not based on the appropriate edition of the AMA Guides. Thus, her lack of formal training in the AMA Guides and her inability to recall with specificity how she arrived at the impairment rating she assessed do not render her opinion inadmissible.

Finally, Employer contends the trial court should have disallowed Dr. Ledbetter's opinions based upon *McDaniel v. CSX Transportation, Inc.*, 955 S.W.2d 257, 265 (Tenn. 1997), in which the Tennessee Supreme Court stated that an "expert's opinions are [to be] based on relevant scientific methods, processes, and data." Employer asserts the trial court "misapplied *McDaniel* in determining that Dr. Ledbetter used a tested methodology," contending Dr. Ledbetter "was unable to explain her methodology to the trial court during her deposition," and that the trial court "assumed that Dr. Ledbetter's methodology was the same as the [AMA Guides]."

6

The trial court concluded that Employer's argument concerning Dr. Ledbetter's methodology "strains the application of *McDaniel*," stating the AMA Guides "provides the relevant methodology," and adding that because the use of the AMA Guides "is mandated by statute, no *McDaniel* analysis of that methodology is necessary or appropriate." The trial court stated that the pertinent question is "whether Dr. Ledbetter properly applied the [AMA] Guides methodology," and it concluded she did, stating her failure to explain how she calculated Employee's grade modifier "might be relevant to the Court's evaluation of her opinion but does not preclude its admissibility." As stated in *McDaniel*, a trial court "must assure itself that the opinions are based on relevant scientific methods, processes, and data, and not upon an expert's mere speculation." *Id.* Considering the totality of Dr. Ledbetter's testimony, we find the preponderance of the evidence supports the trial court's determination that Dr. Ledbetter applied the methodology contemplated by the AMA Guides and that her inability to recollect the details of her impairment assessments for Employee's alleged traumatic brain injury and cervical injury during her deposition do not indicate such a lack of trustworthiness as to render her opinions inadmissible.

## Conclusion

We find no abuse of discretion in the trial court's denial of Employer's motion in limine. Accordingly, we affirm the decision of the trial court and remand the case. Costs on appeal are taxed to Employer.

7



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**WORKERS' COMPENSATION APPEALS BOARD**
**(HEARD OCTOBER 1, 2019, AT NASHVILLE)**

| | | |
|---|---|---|
| Darrell Ailshie | ) | Docket No. 2017-05-0869 |
| | ) | |
| v. | ) | State File No. 93732-2014 |
| | ) | |
| TN Farm Bureau Federation, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Dale A. Tipps, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 16th day of October, 2019.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Richard Matthews | | | | X | rmatthews95@aol.com<br>duane@matthewsfirmpllc.com |
| Nick Peterson | | | | X | nick.peterson@petersonwhite.com<br>beverly.uphoff@petersonwhite.com |
| Dale A. Tipps, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Jeanette Baird
Deputy Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-0064
Electronic Mail: WCAppeals.Clerk@tn.gov